**LIBERTY LOAN CORPORATION OF ANTIOCH, Appellant,**

**v.**

**Joe Ann BROWN (Rieke), Respondent.**

**No. KCD 26098.**

Missouri Court of Appeals, Kansas City District.

April 2, 1973.

John R. Hutcherson, Gladstone, for appellant.

Robert I. Adelman, Kansas City, for respondent.

Before DIXON, P. J., and SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

This is an appeal from an order of the court below granting the defendant a new trial on the issues raised by her counterclaim. The parties will be referred to herein as "Loan Company" and "Rieke". The case arose in the Magistrate Court in an action brought by the Loan Company on a promissory note signed by Rieke and her former husband, Brown, upon which there was an unpaid balance due.

The defendant therein, Rieke, filed a counterclaim for $10,000 actual and $10,000 punitive damages, claiming that the Loan Company had invaded her right of privacy and unnecessarily harassed her in its attempts to collect the balance on said note, and that such acts were willful, wanton and malicious, thus giving rise to punitive damages. The cause was thereupon transferred to the Circuit Court for determination.

The Circuit Court sustained Rieke's motion for summary judgment on Loan Company's petition when it was shown that it had previously obtained a judgment against the defendant Rieke and her former husband, Brown, for the unpaid balance due on the note, and that such judgment was final and res adjudicata when the present suit was filed. The case proceeded to trial before a jury on Rieke's counterclaim for damages and resulted in a verdict in favor of the Loan Company.

Rieke's timely filed motion for a new trial was sustained by the court below on the grounds that the verdict for the Loan Company was against the greater weight of the evidence and that it was error to give Instruction No. 6, submitted by the plaintiff. Loan Company in due time and in proper form lodged this appeal.

Loan Company urges us to reverse the court below, first claiming that the court erred in granting Rieke's motion for a new trial on the ground that the verdict was against the weight of the evidence.

■ In this area, the scope of our review is historically and clearly defined and limited. In any case where a trial court has *granted* a new trial *for any reason*, an appellate court must be more liberal in upholding such action than when a motion for a new trial is denied. Johnson v. West, 416 S.W.2d 162, 166 (Mo.1967); Daniels v. Dillinger, 445 S.W.2d 410, 419 (Mo.App.1969); Union Electric Company v. Turner, 446 S.W.2d 430, 433–434 (Mo. App.1969); Royal Indemnity Company v. Schneider, 485 S.W.2d 452, 457 (Mo.App. 1972).

■ Where the trial court grants a motion for a new trial upon the ground that the verdict is against the weight of the evidence (as did the court below), our review is even more clearly concentrated and limited. The trial court may so act, even in a jury-tried case, under the authority of Rule 78.01 V.A.M.R., but only one new trial may be granted upon such ground.

In Phillips v. Phillips, 443 S.W.2d 144 (Mo. en banc 1969), the court said, l.c. 146:

"It has been held time and again that it is the province of the trial court, and not of the appellate court, to weight (sic) the evidence on motions for new trial and to grant same if, in its judgment, the verdict is against the weight of the evidence. * * * And the reviewing court is and should be liberal in sustaining an order granting a new trial. * * * The trial court has a broad discretion in granting one new trial on the ground that the verdict is against the weight of the evidence, and its order will not be disturbed, except in case of manifest abuse of discretion. * * * This rule is applicable to court-tried as well as jury-tried cases. * * *"

See also: Slusher v. United Electric Coal Companies, 456 S.W.2d 339, 340 (Mo. 1970); Bedrosian v. Chapman, 466 S.W.2d 693 (Mo.1971); Foster v. Rosetta, 443 S. W.2d 183, 185 (Mo.1969).

The sound basis for such rule is that the trial court has a superior opportunity to consider all of the evidence, whether preserved in the record or not, to see, hear and observe the witnesses; to "sense the trial atmosphere" and thus to evaluate and weigh the evidence. Plas-Chem Corporation v. Solmica, Inc., 434 S.W.2d 522, 527 (Mo.1968).

It has been logically determined that this limited scope of appellate review in this type of case is based upon matters of judicial *policy*, not lack of jurisdiction. King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S.W.2d 458, 464 (banc 1942); Clark v. Quality Dairy Company, 400 S.W.2d 78, 82 (Mo.1966).

In the case before us, it is not claimed in either Loan Company's motion for a new trial nor its points and authorities that Rieke failed to make a submissible case upon the cause of action stated in her counterclaim, so our review is confined, within the limits above discussed, to a determination of whether the record discloses a manifest abuse of discretion. In weighing the evidence, the trial court was not faced with simply a matter of quantitative analysis of the evidence but rather primarily with a qualitative analysis thereof, and our review is guided and tested by our conclusion of whether or not the record discloses that there was substantial evidence to have supported a verdict for Rieke. Day v. Mayberry, 421 S.W.2d 34, 38 (Mo.App. 1967); Leonard v. Bartimus, 463 S.W.2d 579, 580–581 (Mo.App.1971).

The resolution of this matter therefore requires a brief review of the evidence.

The defendant Rieke testified that during her marriage to a Mr. Brown in 1965, they had borrowed approximately $1500.00 from the Loan Company, which loan was secured by a chattel mortgage on an automobile and furniture. Later, she and Mr. Brown were divorced and thereafter Mr. Brown went into bankruptcy and thus discharged his individual liability on said loan.

After Brown's bankruptcy, she was contacted by representatives of the Loan Company and told them where they could find the security. She stated that at no time did she deny the obligation, but wanted the Loan Company to first exhaust the security through recovery of the automobile and other security. The note was eventually reduced to approximately $610.00, upon which balance the Loan Company secured a default judgment against the defendant and Brown in November of 1968. This judgment became final and was not appealed. Some inquiries were made of her by the Loan Company representatives in January of 1969 regarding the balance due, and she advised them that she had no money to pay. She was supporting herself and three children and was working as a waitress at a tavern known as the "Little Place" at the time of the incidents involved.

On January 15, 1969, while at work, she received a call from her daughter, stating that a representative of the Loan Company was at her home and wanted to come to her place of work. She made arrangements to meet him after work at the home; he demanded payment of the judgment; and she again told him she had no money. She and this person went to a telephone and called a Mr. Cates at the Loan Company, who advised her he wanted at least a $10.00 good faith payment. She advised him she did not have any money and that she wanted to talk to her lawyer, and Cates was to call her at work the next morning. The following morning he did call and she told him she had not been able to reach her lawyer and had no money. Cates called her back immediately and this was followed by 8 or 10 telephone calls within an hour or an hour and a half from Cates at her place of work, during the course of which conversations he used violent and abusive language to her.

She testified that among the appellations which Cates applied to her were "No good, dirty bitch", "two-bit whore", "Bitch", "Whore", "Slut", "Prostitute", and further, told her he intended to collect the account by one means or another, and threatened to harm her teen-age daughter with his automobile, and stated, "You will pay one way or the other".

These "conversations" were over a business phone. During one of these calls from Cates, a Mr. Aulthouse, a laundry service man, at the request of Rieke, listened in on an extension phone and verified that the man on the other end of the line (identified to him by Rieke as Cates) used the language and made the threats above quoted. Aulthouse testified by deposition to this effect at the trial. He testified that Mrs. Rieke was polite in her conversations but rapidly became a "nervous wreck" while he was there and that she became real upset about the threats to her child. Aulthouse testified that later that day, he was interviewed by the police and told them these facts.

Rieke testified that after Mr. Aulthouse left the place of business, Cates called again several times, and she finally called the police. A policeman, one Spadafora, came to the place of business, listened in on one of the conversations, broke in and told Cates that he should employ legal channels to collect his debt and to quit harassing Rieke.

Rieke testified that she became so worried about her daughter that she left work and went home to be with her, and missed some work, and kept the daughter out of school in fear of the threatened harm to her daughter.

On cross-examination, she testified that the Little Place was a beer tavern in which she was a waitress.

James William Cates testified that on the dates in question, he was manager of the Loan Company and supervised all facets of its operation; that after Brown's bankruptcy, he attempted to collect the account from Rieke; that on various occasions he sent assistants to see her; that he had never seen her personally until the court appearance, but admitted calling her on the telephone with regard to the account on 3 or 4 occasions, but denied making any threats or using any abusive language to her. He admits that the policeman advised him to go through legal channels and that thereupon, he turned the matter over to his attorneys for suit. He stated that the word "damn" is the worst word he used. He stated that he was aware that Rieke was divorced and had three children.

The police report and complaint were introduced into evidence and contained the facts substantially as above related.

Officer Spadafora was offered as a witness by the Loan Company and verified a complaint made by Rieke; his going to the Little Place; that he advised Cates to follow legal channels; that he interviewed Aulthouse that afternoon; and that the facts contained in his report were accurate, except, he added in his testimony at the trial that the facts stated in the report concerning Aulthouse were incorrect in that Aulthouse told him that he had not actually listened in on the Rieke-Cates conversation but was giving the officer facts related to him by Rieke. He offered no explanation as to why this was not noted on the report the day of the occurrences.

■ We are of the opinion and so rule, that the foregoing constitutes substantial evidence which would have supported a verdict for Rieke based upon a tortious invasion of her right to privacy (to be left alone) and that the Loan Company's invasion of that right "was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community". Restatement (Second) of Torts, Section 46 (1964); Biederman's of Springfield, Inc. v. Wright, 322 S.W.2d 892 (Mo.1959); Pretsky v. Southwestern Bell Telephone Company, 396 S.W.2d 566 (Mo.1965); Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo.1969);

**668**

Williams v. KCMO Broadcasting Division-Meredith Corporation, 472 S.W.2d 1, 3 (Mo.App.1971).

It follows, therefore that the trial court did not abuse its discretion in granting Rieke a new trial on the ground that the verdict was against the weight of the evidence.

The order awarding Rieke a new trial also specified the ground of error in Instruction No. 6. Discussion of this is not necessary to disposition of this appeal. However, upon retrial, it would be well to limit this instruction to the converse of Rieke's verdict directing instruction.

The judgment is affirmed and the cause remanded.

All concur.