UNITED TELEPHONE COMPANY OF MISSOURI, Plaintiff-Respondent,

v.

Bob HORN, d/b/a/ Bob Horn Real Estate and Development, Defendant-Appellant.

No. WD 31328.

Missouri Court of Appeals, Western District.

Dec. 30, 1980.

Roger Guy Burnett, Robert F. Sevier, Liberty, for defendant-appellant.

Joseph Y. DeCuyper, Hsiang-Lin Lee, Kansas City, for plaintiff-respondent.

Before WASSERSTROM, C. J., Presiding, and DIXON and SOMERVILLE, JJ.

**WASSERSTROM, Chief Judge.**

Plaintiff sued for defendant's negligence in damaging plaintiff's underground telephone line. Defendant counterclaimed for damages. The trial court found for defendant on plaintiff's claim and for plaintiff on defendant's claim. Defendant appeals from that portion of the judgment adverse to him.[1] We affirm.

The trouble between the parties started when defendant's equipment in the course of digging a ditch for a new water line, struck and severed a buried telephone line belonging to plaintiff. When that occurred, defendant called plaintiff who sent out a crew to repair the damaged line. Plaintiff thereafter billed defendant for the value of this repair work, but defendant denied liability. Plaintiff then sent a demand letter which read in part as follows:

"Please send full payment to our office by Wednesday, July 21, 1976. If we have not received full payment as of this date, both your local service (676–2282) and your foreign exchange service (781–7146) will become subject to suspension without further notice."

Plaintiff's representative who prepared that letter relied upon a tariff provision on file with the Missouri Public Service Commission which provided that a customer's telephone service might be suspended by plaintiff "[f]or non-payment of toll service charges or exchange service charges or the non-payment of any recurring or non-recurring charges authorized by this tariff, after five days delinquent notice has been given to the customer." Plaintiff's commercial supervisor interpreted that tariff provision to encompass the type of claim which plaintiff was pressing against defendant.

When defendant received the letter just referred to, he called plaintiff's office and remonstrated about the great damage which would be caused to him by an inter-

ruption to his telephone service. Defendant testified that he was so worried about the situation that he developed a headache and on the way home he stopped by the drug store and bought some over-the-counter medication. The next day he consulted with his attorney and put the case in his hands.

Defendant's attorney promptly got in touch with plaintiff's office. When that did not succeed in resolving the issue, he then called the Missouri Public Service Commission, who confirmed that plaintiff's tariff did not permit interruption of defendant's phone service because of the disputed claim. That led to a member of the Commission staff calling plaintiff to convey that interpretation.

Upon receipt of that advice from the Commission, plaintiff desisted from any further threat of suspending defendant's phone service, and instead, plaintiff instituted the present lawsuit. Defendant in response counterclaimed for damages alleged by him to arise from the earlier threat to suspend his telephones. Trial was commenced to a jury and evidence taken; but at the close of all the evidence, the trial court directed a verdict against each claim.

### I.

Defendant's first point is to the effect that he made a submissible case on the theory that plaintiff had discriminated against him in violation of Section 392.-200(3),[2] which provides as follows: "No * * telephone corporation shall make or give any undue or unreasonable preference or advantage to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever * * *."

Defendant argues that this statutory provision was violated in that plaintiff threat-

---

1. Defendant's notice of appeal states that he appeals "from the order of the trial court overruling Defendant's motion for a new trial on his counterclaim." That order is not appealable. However, we will treat the notice, as has been done in prior cases, as if it properly stated the appeal to be from the underlying judgment. *Lucky v. Avon Products, Inc.*, 589 S.W.2d 364 (Mo.App.1979); *Empire Gas Corp. v. Randolph*, 552 S.W.2d 82 (Mo.App.1977).

2. All statutory references are to RSMo 1978.

ened to cut off his telephone service, although no similar threat would have been made against someone who had committed negligence by colliding with one of plaintiff's motor vehicles, and no such threat could have been made to a nonsubscriber who might have damaged an underground telephone line just as defendant had done.

The first and perhaps the most satisfactory answer of several which could be given to this contention is that plaintiff never did any act which could rise to the level of discrimination. The most that it did at any time was merely to *threaten* to suspend the telephone service, and until such suspension actually took place, there was no consummated act of discrimination. Plaintiff only announced an *intention* to suspend service to defendant. Its office personnel testified that in so doing, they acted in good faith on the belief that the company's tariff granted this authorization. When the Commission notified them to the contrary, the announced intention to suspend service was dropped and nothing was ever done along that line. We cannot believe that an announced intention to do an act, erroneously thought at the time to be proper and immediately abandoned when the error became known, was intended by Section 392.200(3) to constitute an illegal discrimination.

If it could be said that the mere threat could be discriminatory, still there is no proof that some other specific person actually stood in the same or similar situation and nevertheless did not receive a threat of suspension of telephone service. The key testimony upon which defendant attempts to raise his whole first argument occurred during the examination of Garrelts, plaintiff's commercial supervisor. A fair sample of that testimony is as follows:

"Q So if you're in a car wreck, or one of your company cars is in a car wreck and someone's claimed to be negligent, you don't issue a bill for that?

A If a car strikes a pole of ours, yes, we would.

Q But if a car struck a car of yours, you don't send a bill for that, do you?

A No."

The foregoing testimony is purely hypothetical. Even assuming general comparability of a vehicle accident to the cutting of a telephone line, the evidence points to no actual instance in which a company vehicle belonging to plaintiff had actually been damaged and the surrounding circumstances. Nor can the case of a non-subscriber cutting a telephone line be considered as comparable, because a non-subscriber by definition would not be subject to suspension of service. Absent an actual and truly comparable incident, there is no factual basis upon which a finding of discrimination in violation of the statute could be made.

## II.

■ Defendant's second point is that he made a submissible case on the theory of outrageous conduct. A number of cases have held a creditor liable on this ground for the employment of particularly harsh collection methods. But in order for that principle to be applied, the acts of the creditor must be "extreme, outrageous, atrocious, utterly intolerable, and beyond all possible bounds of decency." *Leonard v. Pioneer Finance Co.*, 568 S.W.2d 937, 943 (Mo.App.1978). The action of plaintiff here cannot be so characterized.

■ Moreover the doctrine of outrageous conduct will be applied only where the person subjected to the conduct has been caused to suffer severe emotional stress and the intensity and duration of the stress are factors to be considered as to the degree of severity. *Leonard v. Pioneer Finance Co., supra*, at p. 942. In the present case even if defendant's testimony be taken at full face value, the emotional stress caused to him was very minor. He testified only to stress leading to a headache on one day, and the only treatment was taking non-prescription medicine one evening. This degree of stress was even less severe than that which was held to be non-actionable in *Leonard, supra*.

No case was made on the theory of outrageous conduct.

### III.

■ Defendant's next point is that he made a submissible case on the theory of duress. That concept comes into play to provide a basis for undoing an act performed involuntarily. In order for there to be "duress," a person must be subjected to pressure which overcomes his will and coerces him to comply with demands to which he would not yield if acting as a free agent. *Wilson v. Wilson*, 354 S.W.2d 532 (Mo.App.1962). *See also*, Black's Law Dictionary 452, 5th ed. 1979. The doctrine is usually employed to set aside an instrument executed, or to recover money paid, because of coercion exercised by another party having superior power.

■ The doctrine of duress has been applied to enable a customer to recover overpayments wrongfully extracted by a public utility through threats to cut off service. 25 Am.Jur.2d Duress and Undue Influence Sec. 8, p. 364 (1966). The cases cited by defendant under this heading all fall into that classification. The key factor in those cases is that the customer had been forced to pay the illegal and improper charge. In contrast, defendant here never did make the payment demanded by the utility. He did nothing against his will. He has done nothing which needs to be undone, nor has he parted with any money to which he should be restored. The doctrine of duress therefore has no application here.

### IV.

■ Defendant argues as his next point that he should be permitted recovery as a matter of public policy. In support of that proposition his brief states: "If there is no legal sanction for the telephone companies making such threats, collection of unlawful claims will go unbridled." And he further argues, "The public should have a viable means of keeping the telephone company from exceeding reasonable bounds in attempting to collect unlawful claims it has against its customers."

In determining what is or is not demanded by public policy, primary attention must be directed to the statutes. As stated in the leading case on this subject, *In re Rahn's Estate*, 316 Mo. 492, 291 S.W. 120, 123 (1927), quoting prior authority: " 'the very highest evidence of the public policy of any state is its statutory law,' and, 'if there is legislation on the subject, the public policy of the state must be derived from such legislation.' " And it was further held by the Supreme Court in *Brawner v. Brawner*, 327 S.W.2d 808, 812 (Mo. banc 1959) that "statutes are the very highest evidence of public policy and binding on the courts."

There are statutory provisions directly pertaining to the subject at hand. So, Section 386.250(6) grants jurisdiction and supervision to the Missouri Public Service Commission over every telephone company. Section 386.390 provides that a complaint may be made by the Commission itself on its own motion or by public counsel or by any person against any public utility with respect to any act done or omitted to be done by that public utility. And Section 386.360(1) provides that whenever the Commission shall be of the opinion that a public utility is failing or omitting or about to fail or omit to do anything required of it by law, then the Commission may direct its general counsel to commence an action in the circuit court to prevent such violations or threatened violations.

Thus, there is ample provision made by statute to control plaintiff telephone company, and there is no need for the courts to create a new cause of action in order to prevent plaintiff's actions from going "unbridled." The legislature has plainly shown that the control of public utilities shall rest with the Public Service Commission, not with the courts. If defendant had a complaint, all he had to do was to register that complaint with the Commission. In fact, that is exactly what defendant's counsel did in this case, and he obtained prompt and effective relief.

No public policy calls for further intervention by the courts.

### V.

■ For his final point, defendant contends that he made a submissible case for

punitive damages. Suffice it to say that there can be no recovery of punitive damages absent an award of actual damages, *Longmore v. Merwin*, 585 S.W.2d 545 (Mo. App.1979); *Boswell v. Brinckmann*, 579 S.W.2d 781 (Mo.App.1979); *Compton v. Williams Bros. Pipeline Company*, 499 S.W.2d 795 (Mo.1973). For the reasons already given, defendant has proved no cause of action for actual damages, and under the above authorities he cannot claim punitive damages.

Affirmed.

All concur.