James A. REDD, and Mary L. Redd, his wife, Plaintiffs-Appellants,

v.

HOUSEHOLD FINANCE CORPORATION, Nationwide Financial Corporation, Franklin Finance Company, Preferred Loan Corporation, Chippewa Trust Company, Defendants-Respondents.

No. 43224.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 16, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Ernest L. Keathley, Jr., St. Louis, for plaintiffs-appellants.

Harry Greensfelder, III, and John C. Rasp, Charles L. Merz, Claire Halpern, St. Louis, Theodore Ponfill and Yvonne Homeyer, Clayton, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

Plaintiffs, James A. and Mary L. Redd alleged the execution of separate agreements which exacted interest in excess of the maximum allowed by § 408.030 with each of the following defendants:[1] Household Finance Corporation, hereinafter HFC, Nationwide Finance Corporation of Missouri, hereinafter Nationwide, Franklin Finance Company, hereinafter Franklin, Preferred Loan Corporation, hereinafter Preferred, and Chippewa Bank, hereinafter Chippewa. Plaintiffs also alleged all defendants conspired together to exact usurious interest from plaintiffs. Upon defendant's motions the claims were dismissed. We affirm.

The record shows plaintiffs were active debtors: Plaintiff entered into an agreement with defendant HFC, on May 24, 1974, which financed $2,033.69 and provided for a 16.349 "annual percentage rate." On

---

1. Statutory references are to RSMo 1978. § 408.030 provides that "parties may agree, in writing, for payment of interest, not exceeding ten percent per annum, on money due or to become due upon any contract."

June 4, 1974 plaintiffs entered into a retail installment contract and security agreement with Western Mobile Home Sales of St. Louis, Inc. The purpose of this agreement was to finance plaintiffs' purchase of a 1974 Casa Vegas mobile home. The agreement financed $7,265 and provided that the annual percentage rate was 11.68. The contract was assigned to defendant Nationwide. Plaintiffs purchased another mobile home on March 16, 1976. This purchase was financed by a similar agreement with Western Mobile Home Sales of St. Louis, Inc. This second agreement financed $10,154.65 and provided for a 12.7 annual percentage rate. This agreement was also assigned to defendant Nationwide. On February 15, 1977, plaintiffs entered into an installment contract to finance the purchase of a freezer, food service and related items from Northland Grocery Service Company. The agreement financed $1,024.64 and provided for a 19.12 annual percentage rate. This contract was assigned to Preferred. On July 13, 1977, plaintiffs entered into an agreement with defendant Franklin. This agreement financed $1,543.78 and provided an 18.24 annual percentage rate. Finally, on January 31, 1978, plaintiffs entered into an installment contract with Coronet Dodge to finance the purchase of a 1978 Dodge pick-up truck. The agreement provided that the amount financed was $7,083 and the annual percentage rate was 12.58. The contract was subsequently assigned to defendant Chippewa.

## I

Plaintiffs contend the trial court erred in sustaining the motions to dismiss made by defendants Nationwide, Chippewa and Preferred because the contracts entered into between plaintiffs and these defendants were usurious as they required the payment of interest in excess of that allowed by § 408.030. We do not agree. In Missouri it is well accepted that usury is the taking or exacting of interest at a rate in excess of that allowed by law for the loan or use of money. *Wyatt v. Commercial Credit Corp.*, 341 S.W.2d 348, 351 (Mo.App. 1960). It is equally well accepted that § 408.030, Missouri's usury statute, applies only to a loan of money and has no application to the bona fide sale of goods. *Woods v. Evans Products Co.*, 574 S.W.2d 488, 491 (Mo.App.1978). Thus, it has been oft held that a seller can demand a higher price for goods sold on an installment basis over time than for the same product sold for cash. *General Motors Acceptance Corp. v. Weinrich*, 218 Mo.App. 68, 262 S.W. 425, 428–429 (1924). Plaintiffs acknowledge that in deciding whether a contract is a loan or retail credit sale "the contents of the document itself will determine its status." A cursory examination of plaintiffs' petition, which included copies of the contracts in question, reveals that the agreements which were assigned to defendants are bona fide installment sale contracts. In each of the complained of transactions plaintiffs desired to purchase items of personal property. To effectuate each of the purchases plaintiffs executed a retail installment contract and a security agreement. In each case the installment contract clearly set out the: cash price, finance charge,[2] deferred payment price[3] and annual percentage rate.[4] All of

---

**2.** Federal Reserve Board Regulation Z (hereinafter "Reg. Z"), 12 C.F.R. § 226.4 (1980) defines finance charge as the "sum of all charges, payable directly or indirectly by the customer and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit. . . . "

This definition includes the total of all costs expressed in dollars and cents that the customer is required to pay to obtain credit. The finance charge is not limited to interest but includes transaction charges, carrying charges, service charges, time price differential, loan fees, finders fees, investigation of credit report fees, and any amounts payable as a discount.

Taylor, Missouri and Federal Credit Disclosures-Coexistence, 35 Mo.L.Rev. 382, 384 (1970).

**3.** The deferred payment price is basically the cash price, plus the finance charge, plus any other charges to the buyer, such as credit life insurance.

**4.** Regulation Z, 12 C.F.R. § 226.5 (1980) basically defines the annual percentage rate to be the ratio of the finance charge which is applicable to the unpaid balance. "Thus, the annual

the attendant security agreements granted the seller a security interest only in the item sold. A perusal of the three contracts reveals all of the transactions possess the indicia of a retail installment sale: (1) The cash price and deferred payment price were expressly stated and agreed upon. (2) A security interest was taken on the items purchased. (3) The seller of the goods had no other interest in the transaction. *Lucas v. Beco Homes, Inc.*, 494 S.W.2d 417, 423 (Mo.App.1973). Because plaintiffs' petition failed to allege that the contracts in question were anything but retail installment contracts with attendant security agreements, we cannot say the trial court erred in dismissing plaintiffs' claims of usury leveled against defendants Nationwide, Chippewa and Preferred.

## II

■ Plaintiffs also contend the trial court erred in dismissing their claims of usury against defendants HFC and Franklin. We do not agree. Plaintiffs failed to state a claim against these defendants because the loans here in question were made pursuant to § 408.100 through 408.220, commonly known as the Small Loan Act. Specifically, the interest on each loan was computed in accordance with § 408.200. Plaintiffs urge us to interpret the Small Loan Act in a manner which would prohibit its application to loans in excess of $500. Such an interpretation would mean that the HFC and Franklin loans could not be within the

Small Loan Act as both were for amounts which exceeded $500. We believe such a construction would fly in the face of the statute's plain language. Plaintiffs correctly point out that § 408.100 authorizes lenders to charge interest not exceeding 2.218% on certain loans of $500 or less. Reading the first sentence of § 408.200(1) [5] we think it clear that lenders are prohibited from dividing a loan which is greater than $500 into several loans of $500 or less and charging the interest permitted by § 408.100, 2.218% per month. However, the remaining portion of § 408.200(1) [6] permits, in clear and explicit terms, the application of the interest rates permitted by § 408.100 to loans in excess of $500. This portion of the statute permits lenders to charge 2.218% per month on the first $500 of the loan while prohibiting interest of greater than 10% per annum on the balance exceeding $500. Further, such loans may be evidenced by one or more than one note or loan contract. *Beneficial Finance Co. of St. Charles, Inc. v. Kitson*, 530 S.W.2d 497, 504 (Mo.App.1975). Because the loans in question were consistent with the provisions of § 408.200 they were not usurious.

## III

■ Plaintiffs next contend the trial court erred in dismissing their claim that all defendants conspired to charge interest in excess of that permitted under § 408.030. We do not agree. As discussed above plaintiffs failed to establish that any defendant

percentage rate discloses in terms of 'percent', and in a uniform manner to promote comparison, the same information that the finance charge discloses in terms of dollars and cents— namely the actual cost of the credit extension." Taylor, Missouri and Federal Credit Disclosures-Coexistence, 35 Mo.L.Rev. 382, 384 (1970).

5. "[N]o lender shall permit any borrower to be indebted to such lender on two or more contracts at any time for the purpose or with the result of contracting for or receiving the interest permitted by section 408.100 on more than five hundred dollars of principal (excluding interest)."

6. It shall be lawful for a lender to lend at the same or different times to the same borrower five hundred dollars or less under and at the

rates permitted by section 408.100 and additional amounts at not more than ten percent per annum even though such additional amounts bring the aggregate amount outstanding to an amount in excess of five hundred dollars and whether such loan or loans be evidenced by one or more than one note or loan contract. When both aggregate principal amount outstanding exceeds five hundred dollars and is evidenced by one note or loan contract, it shall be treated as one loan and interest may be computed at the rates permitted under section 408.100 on that part of the unpaid principal balance of the total indebtedness not exceeding five hundred dollars and at no more than ten percent per annum on any remainder of such unpaid principal balance.

violated § 408.030. Thus plaintiffs claim of conspiracy must fail as plaintiffs did not show they suffered some damage due to some wrongful act done by one or more of the defendants. *Royster v. Baker*, 365 S.W.2d 496, 499–500 (Mo.1963).

IV

Plaintiffs' final contention is that the trial court erred in sustaining all defendants' motions to dismiss plaintiffs' claims for punitive damages. As demonstrated in parts I, II and III of this opinion plaintiffs' claims for actual damages were properly dismissed. Thus, punitive damages could not possibly be awarded. *Koenig v. Skaggs*, 400 S.W.2d 63, 68 (Mo.1966).

Affirmed.

WEIER and GUNN, JJ., concur.