Burton J. WILNER and Doris Wilner,
Plaintiffs-Respondents,

v.

William G. O'DONNELL, et al., (Deceased), Arthur Stine, (Deceased) App., Albert H. Feldt, Administrator de bonis non, Defendant-Appellant.

No. 42500.

Missouri Court of Appeals,
Eastern District,
Division One.

July 27, 1982.

---

William G. O'Donnell, Anthony L. Anderson, Clayton, for defendant-appellant.

Marvin Klamen, John L. Davidson, Clayton, for plaintiffs-respondents.

STEPHAN, Presiding Judge.

This case involves four notes and deeds of trust. Judgment was entered in favor of plaintiffs whereby: plaintiffs were to recover actual and punitive damages from defendants for tortiously conspiring and threatening to foreclose on the first two notes and deeds of trust; defendants were enjoined from attempting to foreclose on those notes and deeds of trust; plaintiffs were to recover from defendant Stine an amount equal to excessive interest and twice the amount of usurious interest paid on the fourth note and deed of trust; the fourth note and deed of trust were to be reformed; and plaintiffs were to recover their reasonable attorney's fees and costs. Defendants appealed. We reverse the award of actual and punitive damages for threatened foreclosure. In all other respects the judgment is affirmed.

Plaintiffs, husband and wife, own and live in a single family home in St. Louis County, Missouri. In 1974 that home was subject to two deeds of trust held by Lafayette Federal Savings and Loan, or its predecessor, as security for two notes. That year they gave a third deed of trust on their home in the amount of $40,000 to one Alice M. Bub (not a party to this suit) as partial security for a loan of $125,000 guaranteed by plaintiffs. That loan was made to a corporation owned by plaintiffs, Audio Panorama, Inc., and the proceeds were to be used for the corporation's audio equipment business.

Plaintiffs still needed money for their corporate business and defendant Stine agreed to lend them $25,000. On August 8, 1976 plaintiffs, as individuals, executed a promissory note in the principal amount of $30,000 payable to defendant Stine, doing business as Art Stine Realty Co., in thirty-six monthly installments of $940.10. On its face, the note bore interest at the rate of eight percent per year. We refer to this as the Art Stine note. Plaintiffs also gave a deed of trust on their residence in St. Louis County and the business property in St. Charles County. In return, defendant Stine gave a check for $29,000 which was deposited in the bank account of Audio Panorama, Inc. Simultaneously, $4,000 was withdrawn and returned to defendant Stine. Plaintiffs' residence then was encumbered by the following deeds of trust:

| Priority | Amount | Owner/Grantee |
|---|---|---|
| 1 | $30,000 | Lafayette Federal |
| 2 | 12,500 | Lafayette Federal |
| 3 | 40,000 | Alice M. Bub |
| 4 | 30,000 | Art Stine Realty Co. |

Eleven monthly payments [1] were made on the Art Stine note by checks drawn on the account of Audio Panorama, Inc. Then payments stopped. Plaintiffs also defaulted on the $125,000 loan and, as a result, lost their corporate business property in St. Charles County. The third deed of trust on their residence, which was given to secure that loan, was not cancelled and there was no foreclosure.

In August of 1978 the Lafayette Federal notes and the first and second deeds of trust were purchased by defendant Frances Mueller. Plaintiffs received notice of this transaction from the savings and loan. Thereafter defendant Mueller called plaintiffs at home and demanded payment of those notes, threatening foreclosure. Plaintiffs contacted their attorney who wrote to defendant Mueller requesting that arrangements be made to exhibit the notes to Mr. Wilner to verify her ownership and to allow for recording payments on them.

Thereafter defendant Stine telephoned plaintiffs and he threatened to foreclose on the first two deeds of trust if timely payments were not made on the Lafayette Federal notes. In response, he received a letter from one of the Wilners' lawyers, essentially the same as the one sent to defendant Mueller, offering payment upon exhibition of the notes and evidence that Mueller was Stine's straw party.

When no response to the letters was forthcoming, plaintiffs brought this action. The parties first appeared at a hearing to determine if a temporary injunction barring foreclosure should issue. Both defendants testified. Initially, they agreed that defendant Mueller bought the Lafayette Fed-

eral notes and deeds of trust as a personal investment, and that she used her own funds as well as a gift from defendant Stine. Later, however, under questioning from plaintiffs' counsel, it was admitted that the entire purchase price was furnished by defendant Stine and that defendant Mueller acted at his direction. Only plaintiffs offered evidence at trial on the merits of their petition; defendants did not testify.[2]

In due course judgment was entered with findings of fact and conclusions of law. The trial court specifically found that defendants conspired to force plaintiffs into a "manufactured" default on the Lafayette Federal notes and acted in furtherance of this conspiracy. The aim was to foreclose on the first deeds of trust, thus acquiring the plaintiffs' equity in their home and extinguishing the Alice M. Bub third deed of trust, which was an apparent barrier to the Art Stine Realty Co. fourth deed of trust. The existence of the third deed of trust presumably reduced the value of the right to foreclose thereunder even though the Art Stine note was long in default. Furthermore, the court found that defendants' threats of foreclosure caused plaintiffs "substantial mental suffering" and induced them to bring this suit.

The court found that § 400.3–505 RSMo 1969[3] applied, so that plaintiffs could require, without dishonor, exhibition of the Lafayette Federal notes in order to identify who had the authority to accept payment. Therefore, the trial court entered a permanent injunction restraining the defendants from attempting to foreclose on the Lafa-

---

1. Ten were for $940.10 and one was for $925.10.

2. Defendants did present their attorney and trustee who testified regarding his services and fees.

3. Section 400.3–505 RSMo 1969 provides:
   "(1) The party to whom presentment is made may without dishonor require
   (a) exhibition of the instrument; and
   (b) reasonable identification of the person making presentment and evidence of his authority to make it if made for another; and

(c) that the instrument be produced for acceptance or payment at a place specified in it, or if there be none at any place reasonable in the circumstances; and
(d) a signed receipt on the instrument for any partial or full payment and its surrender upon full payment.
(2) Failure to comply with any such requirement invalidates the presentment but the person presenting has a reasonable time in which to comply and the time for acceptance or payment runs from the time of compliance."

yette Federal notes and deeds of trust until they complied with plaintiffs' demands. The trial court further found that defendants wrongfully and willfully threatened foreclosure while the requirements of § 400.3–505 remained unsatisfied, and concluded that plaintiffs were entitled to recover actual damages of $1.00 for their mental suffering and $5,000 for their attorney's fees. In addition, plaintiffs were awarded $10,000 in punitive damages.

With respect to the $30,000 Art Stine note and deed of trust, the trial court found a "partial failure of consideration" and concluded the note and deed of trust should be reformed to show an initial principal amount of $25,000. The trial court rejected defendant Stine's arguments that this transaction was a "business loan" or a "real estate loan" but found it to be a "residential real estate loan" under § 408.035 RSMo Supp. 1975. Thus, the maximum lawful rate of interest was found to be 10% per year under § 408.030 RSMo Supp. 1975. The court determined what the monthly payments would be to amortize a $25,000 loan over a three year period at 8% per year, and at 10% per year. By comparing these figures with the monthly payments actually made, the trial court calculated that excessive interest (more than 8%) had been paid and that a portion of this amount (more than 10%) was usurious interest, which was doubled. Thus judgment was entered in favor of plaintiffs and against defendant Stine in the amount of $3247.81 [4], "together with $5,000 attorneys' fees previously awarded" pursuant to § 408.030 RSMo Supp. 1975. Costs were charged to both defendants.

We review this case upon both the law and the evidence, giving due regard to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01(c)(1, 2). The judgment of the trial court is to be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or

unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We are not bound, however, by the trial court's legal conclusions drawn from those findings. *Kelly v. Maxwell,* 628 S.W.2d 931, 934 [1, 2] (Mo. App. 1982).

We first consider the judgments which relate to the Lafayette Federal notes and deeds of trust, and then turn to the judgments which concern the Art Stine note.

■ From a reading of § 400.3–505, set out in footnote 3, we believe that the trial court was correct in enjoining foreclosure until the requirements of that section were met. The plaintiffs' refusal to make any payments on the Lafayette Federal notes, until the notes were exhibited and the authority of either defendant to demand payment made clear, was justified. Therefore the injunction against foreclosure is affirmed.

Defendants attack the award of actual and punitive damages for threatened foreclosure, claiming in effect that plaintiffs did not plead or prove a cause of action. Plaintiffs, of course, resist this effort by advancing several theories upon which they base their claim for damages. They claim they are entitled to the damages by reason of the defendants' willful concealment of the notes and threats to foreclose upon them. They further contend that defendants' conduct was fraudulent and vexatious and provided further reason for actual damages in the amount of $1.00 for their emotional distress, $5,000 attorneys' fees, and $10,000 in punitive damages.

■ There was no tort of fraud committed. Even though defendants concealed the two notes and failed otherwise to resolve the confusion as to who was authorized to accept payment, the necessary element of "reliance" is absent since the plaintiffs refused to be deceived. Regardless of whether fraudulent concealment or other fraudulent acts by the defendants are present, the plaintiffs did not rely on these acts and make payment to one or the other defend-

---

**4.** No complaint has been made regarding the numerous calculations in the findings of fact,

conclusions of law and judgment, and the same are deemed to be correct.

ant, nor did they risk default by doing nothing. Instead they attempted through their attorney to learn the truth. Therefore, they cannot recover as the victims of fraud. *Ralston Purina Co. v. Swann,* 161 S.W.2d 39, 41 (Mo. App. 1942). And compare *Osterberger v. Hites Construction Company,* 599 S.W.2d 221, 227 [4–7] (Mo. App. 1980).

In spite of plaintiffs' arguments to the contrary, the "vexation" visited upon them by several telephone calls from the defendants simply does not rise to the level of compensability. A debtor may recover from a harassing creditor; but, in order to do so, "the plaintiff must show that defendant's conduct was extreme, outrageous, atrocious, utterly intolerable, and beyond all possible bounds of decency...." *Watson v. Franklin Finance,* 540 S.W.2d 186, 189 [6] (Mo. App. 1976). The telephone calls in which Stine and Mueller each claimed ownership of the Lafayette Federal notes, to which plaintiffs' attorneys responded by letter, cannot be held to constitute "outrageous conduct." See *United Telephone Company of Missouri v. Horn,* 610 S.W.2d 701, 704[3, 4] (Mo. App. 1980). Consequently, the record cannot support even the nominal $1.00 judgment for emotional distress. The trial court's holding to the contrary amounted to an erroneous application of the law and is reversed. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Finally the $5,000 judgment awarded as attorney's fees cannot be considered as actual damages in connection with the Lafayette Federal notes. It is not authorized, either by statute or by contract, in cases such as that presented by the wrongful foreclosure action here. See *Osterberger v. Hites Construction Company,* supra, 230 [27, 28]. It may be allowed in connection with the claim concerning the Art Stine note, as such an award is clearly contemplated by § 408.030, RSMo Supp. 1975 in cases involving usury.

Where actual damages are not or may not be awarded, there can be no recovery of punitive damages. *Redd v. House-*hold Finance Corporation, 622 S.W.2d 255, 259 [8] (Mo. App. 1981); *United Telephone Company of Missouri v. Horn,* supra, at 706. Thus, the judgment for $10,000 punitive damages must be reversed. The judgment, insofar as it is responsive to Count I of the petition, is reversed except as to the injunctive relief.

Defendants urge that the trial court erred in finding the $30,000 note to be usurious under § 408.030 RSMo Supp. 1975, arguing that the transaction was in fact a "business loan" as contemplated by § 408.-035(2) and therefore exempt from the usury statute. To support their position, defendants point to the fact that the $30,000 note was secured by a deed of trust on the Wilners' business premises in St. Charles County as well as on their residential real estate. They also note that the loan proceeds were deposited directly into the account of the Wilners' corporation, and point to testimony by plaintiffs that the purpose of the loan was to shore up their cash-poor business.

"Business loan" is defined in § 408.015(2) RSMo Supp. 1975 as "a loan to an individual or a group of individuals, the proceeds of which are to be used in a business...." The loan in question here would seem to be a business loan under that definition. Nonetheless, § 408.015(6) adds: "No loan secured by residential real estate shall be considered to be a business loan." The $30,-000 loan was "secured by residential real estate." The fact that it was *also* secured by commercial property does not alter this conclusion. The drafters' language seems to us to be unequivocal: any loan that is secured by residential real estate cannot be treated as a "business loan" under Chapter 408. "Throughout the usury statute we are reminded that loans secured by residential real estate are to receive favored treatment," *State ex rel. Crist v. Nationwide Financial Corporation,* 588 S.W.2d 8, 12 (Mo. App. 1979), and our treatment of this issue is consistent with that policy. We rule the point against defendants.

In their Point III on appeal, in which defendants urge that the $30,000 was

exempt from § 408.030 as a business loan, defendants raise two additional matters. They contend that "... the Court erred in permitting respondents to introduce evidence to vary the terms of the note, as written." Defendants' argument on this matter reads, in its entirety, "The Parol Evidence Rule comes into play in that the court should have sustained objections to any testimony at variance with the terms of the instruments themselves." [Citations omitted.] Neither the "point relied on" nor the "argument" apprises us of "what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." under Rule 84.04(d)–(e). We decline to consider the question. *Wissmann v. German Evangelical St. Marcus Congregation,* 612 S.W.2d 138, 141[3] (Mo. App. 1980); *Martin v. Circuit Court of City of St. Louis,* 580 S.W.2d 307, 308–309 (Mo. App. 1978).

■ Defendants, raising an additional matter under Point III, cite *Rukavina v. Accounts Supervision Corporation,* 241 Mo. App. 195, 237 S.W.2d 503, 507 (1951) for their position that "a usury suit cannot be maintained before usury has actually been paid." (This quotation constitutes the whole of defendants' argument on this point.) In *Rukavina,* a debtor sued under § 408.050 to recover excess interest paid. At the time of the suit, the debtor had not made enough payments to cover the amount actually borrowed and the lawful interest owed. The Kansas City Court of Appeals held that no cause of action could be maintained for recovery of usurious interest on a note unless the principal and lawful interest due on the note had been paid. The court gave the following explanation of this rule: "the lender who has charged excessive interest may repent, credit the excessive interest received to principal and, upon the final payment, avoid the violation of the statute and the liability thereunder." *Rukavina,* 237 S.W.2d, at 508.

When *Rukavina* was decided, § 408.050 RSMo 1949, was the only section under Chapter 408 delineating the monetary recovery available in a suit by a debtor

against a usurious creditor. At that time, § 408.030 RSMo 1949, simply set out the maximum interest rate allowed. In 1974, the General Assembly amended § 408.030, providing in subsection (2) thereof for recovery of twice the amount of usurious interest paid. The present suit was brought under this subsection. See § 408.030 (2) RSMo Cum. Supp. 1975.

No language in either § 408.050 or § 408.030 expressly states that a suit for usury may only be brought after principal and lawful interest are paid. In *Rukavina,* the Kansas City Court of Appeals over thirty years ago found that to be the intent of the legislature, but we do not now find the rationale offered by that court to be compelling, particularly when applied to the facts in the case before us. Defendant Stine showed no sign of becoming a "repentant" usurer. Prior to plaintiffs' suit, defendant Stine attempted to obtain payment in full on the usurious note. At the preliminary hearing on this matter, he insisted that he "wouldn't accept anything less" than payment according to the terms of the $30,000 note.

Nor do we think that public policy favors the *Rukavina* holding. Assuming no expression of legislative intent to the contrary, we think that a debtor should be able to unburden himself of the obligation to pay interest at a rate unlawful under § 408.030 as early as possible. The debtor should not be required to have a usurious obligation hanging over his head, wondering until the last minute whether his creditor will "repent," with the extent of his obligation uncertain until his challenge can be resolved, perhaps many years after beginning payment. The note in *Rukavina* was payable in ten monthly installments. The *Rukavina* rule is ill-suited to modern circumstances where long-term notes are commonplace. In the case at bar, plaintiffs had a three-year note; many contemporary real estate loans are payable over thirty or forty year terms.

In light of the foregoing discussion, we hold that a debtor suing under § 408.030(2) need not wait until all principal and lawful

interest payments have been made to recover any "overpayment." Section 408.030(2) gives the debtor a cause of action "[i]f a *rate* of interest greater than permitted by law *is paid.*" (Emphasis added.) Therefore, the cause of action arises when the first payment of interest is made.

 Brief attention should be given to the trial court's award of attorney's fees in this case. The court awarded plaintiffs $5,000 in attorney's fees in ruling favorably on their wrongful foreclosure action. That award is to be vacated pursuant to this opinion. The circuit court, however, also ordered that, under § 408.030, damages should be awarded in twice the amount of usurious interest paid on the $30,000 note, "together with $5,000 attorney's fees previously awarded." Thus, the trial court made one award of attorney's fees resting on two independent "pillars." One of those pillars has been removed; the other stands and supports the award. Nowhere in their briefs do defendants challenge the award of attorney's fees for the usury action. Section 408.030(2) provides that a defendant "adjudged to have received a greater rate of interest [than allowed under subsection 1] *shall* also be liable for the costs of the suit, including a reasonable attorney's fee to be determined by the court." (Emphasis added.) Defendants do not allege the $5,000 award to be unreasonable, and we see no basis in the record for disturbing the trial court's determination.

In their reply brief, defendants raise for the first time the following point of error: "The trial court erred in computing interest on the $30,000 note . . . because the evidence clearly shows that the discount paid by the Wilners did not exceed $1,000, the remainder of the 'discount' having been paid by Audio Panorama, Inc." Defendants thus appear to argue that if the trial court found that reformation of the note was warranted, the note should have been reduced to $20,000 instead of to $25,000. We disagree. If defendant Stine received $4,000 back from the proceeds of his cashier's check, it seems to us to be immaterial whether he received it from the Wilners or

from their corporation. The trial court's task in this area was to determine how much was actually lent; it concluded that the loan was for $25,000, and the record supports this conclusion. In any event, we need not rule on this question, for "[a]ssignments of error set forth for the first time in the reply brief do not present issues for appellate review." *Application of Gilbert,* 563 S.W.2d 768, 771[3] (Mo. banc 1978); *City of Cape Girardeau v. Robertson,* 615 S.W.2d 526, 531[5] (Mo. App. 1981).

The trial court's judgment is reversed as to damages for wrongful foreclosure and affirmed as to the injunctive relief. In all other respects, the judgment is affirmed.

DOWD and STEWART, JJ., concur.