# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2574

_____

| | | |
|---|---|---|
| Kansas City Laser, Inc.; | * | |
| Don Cone, | * | |
| | * | |
| | * | |
| Plaintiff–Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| MCI Telecommunications | * | [UNPUBLISHED] |
| Corporation; MCI WorldCom | * | |
| Communications, Inc., | * | |
| | * | |
| | * | |
| Defendants–Appellees | * | |

_____

Submitted: September 28, 2007
Filed: October 19, 2007

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

PER CURIAM.

Kansas City Laser, Inc. ("KC Laser") is a small business that repairs, refurbishes, and sells small business machines. Don Cone is the principal owner of KC Laser's stock and KC Laser's managing officer and primary salesman. KC Laser and Cone sued MCI Telecommunications Corporation and MCI WorldCom Communications, Inc. (collectively "MCI") alleging several causes of action under

Missouri law. The district court[1] dismissed the claims under Federal Rule of Civil Procedure 12(b)(6). We affirm.

I.     Background

KC Laser and Cone filed their original petition for negligent failure to supervise, intentional failure to supervise, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress in Missouri state court. MCI removed the case to federal court, which has jurisdiction under 28 U.S.C. § 1332(a)(1). MCI then filed a Motion to Dismiss the petition for failure to state a claim under Rule 12(b)(6), which the district court granted.

According to the facts in the petition, which we accept as true, Brown v. Simmons, 478 F.3d 922, 923 (8th Cir. 2007), KC Laser received telephone service from MCI through another company, MaxCom, who leased lines from MCI and resold the service to KC Laser. MCI began calling and demanding KC Laser pay MCI $39,000 and repeatedly threatened to discontinue KC Laser's telephone service unless KC Laser made the payment. KC Laser's monthly telephone bill to MaxCom was $237; the company did not owe MCI $39,000, which according to the complaint MCI ultimately acknowledged.

Discontinuing KC Laser's telephone service would have caused the small company to go out of business. The potential devastating impact and disruption on KC Laser's business was communicated to MCI. MCI persisted in these threats even after learning that KC Laser did not owe $39,000 and that the money was instead owed by MaxCom. As a result of MCI's threats, KC Laser was forced to cancel scheduled billboard advertising and to take other measures to ensure it would not lose

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

its customers. MCI ultimately discontinued the telephone service on September 3, 2003, and restored it a day later when Cone threatened to file suit. As a result of MCI's conduct, Cone became severely upset and "experienced severe emotional suffering and began passing and expectorating blood for which he was required to seek treatment from medical providers." Based on these facts, Cone and KC Laser filed claims against MCI alleging negligent and intentional failure to supervise, negligence, and negligent and intentional infliction of emotional distress.

II.    Discussion

We review de novo the district court's dismissal of the claims under Rule 12(b)(6). Brown, 478 F.3d at 923. For KC Laser and Cone to survive the motion to dismiss, they must have pleaded each element of their claims in the state-court petition. See id. We "grant every reasonable inference in favor of the nonmovant." Id. "However, the [petition] must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) (internal quotation omitted).

A.    Negligent and Intentional Failure to Supervise

KC Laser and Cone allege MCI is liable for negligent failure to supervise MCI's employees, who threatened to terminate and terminated KC Laser's telephone service without reasonable cause. KC Laser alleges MCI is liable for intentional failure to supervise MCI's employees, knowing that harm was substantially certain to result from their actions, but disregarding that risk. To plead claims for negligent and intentional failure to supervise under Missouri law, KC Laser must have alleged MCI was "under a duty to exercise reasonable care so as to control his servant while acting *outside the scope of his employment* as to prevent him from intentionally harming

-3-

others."[2] <u>Truck Ins. Exch. v. Prairie Framing, LLC</u>, 162 S.W.3d 64, 82 (Mo. Ct. App. 2005) (internal quotation omitted). KC Laser and Cone failed to plead this element in their state-court petition—and, in fact, pleaded the opposite, that MCI's employees were "acting within the course and scope of their duties and responsibilities as defendant's employees." Thus, we affirm the district court's dismissal of KC Laser's and Cone's claims for negligent and intentional failure to supervise.

B.    Negligence

KC Laser alleges MCI was negligent because it had a duty not to interfere with its telephone service without lawful reason and MCI violated that duty. "[I]n any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." <u>L.A.C. v. Ward</u>

---

[2]The full definition of negligent supervision states:

A master is under a duty to exercise reasonable care so to control his servant while acting *outside the scope of his employment* as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of harm to them, if
     (a) the servant
          (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
          (ii) is using a chattel of the master, and
     (b) the master
          (i) knows or has reason to know that he has the ability to control his servant, and
          (ii) knows or should know of the necessity and opportunity for exercising such control.

<u>Truck Ins. Exhange</u>, 162 S.W.3d at 82 (quoting Restatement (Second) of Torts § 317 (1965)).

Parkway Shopping Ctr. Co., 75 S.W.3d 247, 257 (Mo. 2002) (en banc) (internal quotation and brackets omitted).  KC Laser and Cone alleged that MCI "had a duty not to interfere with plaintiff KC Laser's telephone service without lawful reason," but this is a "mere conclusion[]" unsupported by "sufficient facts" to establish MCI owed a duty to refrain from interfering with KC Laser's telephone service.  See Quinn, 470 F.3d at 1244 (internal quotation omitted).  We express no opinion on whether MCI may have had a duty to KC Laser arising from a statute, such as Missouri Revised Statute § 392.200,[3] as KC Laser has not alleged this.  Thus, we affirm the district court's dismissal of KC Laser's claim for general negligence.

C.      Negligent Infliction of Emotional Distress

Cone also asserts a claim for negligent infliction of emotional distress, alleging MCI should have realized that its conduct involved an unreasonable risk he would suffer severe emotional distress, and that he was required to seek medical treatment for physical injuries resulting from his emotional distress.  In Bosch v. St. Louis Healthcare Network, 41 S.W.3d 462 (Mo. 2001) (en banc), the Missouri Supreme Court identified the elements of a claim a plaintiff must establish for negligent infliction of emotional distress:

> (1) . . . [t]he defendant should have realized that his conduct involved an unreasonable risk to the plaintiff, (2) . . . plaintiff was present at the scene of an injury producing, sudden event, and (3) . . . plaintiff was in the zone of danger, i.e., placed in reasonable fear of physical injury to her or his own person.

Id. at 465 (internal quotation omitted).  In Bosch, the husband of a medical-center employee who contracted hepatitis C sued the medical center alleging loss of

---

[3]This section deals with the provision of telephone service by a telephone company to its customers.  Mo. Rev. Stat. § 392.200; see also United Tele. Co. of Mo. v. Horn, 610 S.W.2d 701, 704 (Mo. Ct. App. 1980) (indicating that a telephone company that suspends service could be in violation of § 392.200(3), which prevents discrimination in the provision of telephone services).

consortium and negligent infliction of emotional distress. Id. at 464. The Missouri Supreme Court noted that while having a spouse with a contagious disease might result in physical and emotional injury, this "is not the type of injury-producing sudden event contemplated by the claim recognized as the negligent infliction of emotional distress." Id. at 465. Thus, the court dismissed the claim as the plaintiff did not plead facts sufficient to establish a claim for negligent infliction of emotional distress. Id. at 463. Similarly, Cone failed to identify in the petition an "injury-producing sudden event" warranting relief. See id. at 465. As a result, we affirm the district court's dismissal of Cone's claim for negligent infliction of emotional distress.

D.     Intentional Infliction of Emotional Distress

Cone bases his intentional infliction of emotional distress claim on MCI's threats to terminate and termination of KC Laser's telephone service. For this claim, Cone must have pled facts sufficient to establish that MCI's "conduct was extreme and outrageous," that MCI "acted intentionally or recklessly," and that MCI's conduct caused Cone "extreme emotional distress resulting in bodily harm." Cent. Mo. Elec. Coop. v. Balke, 119 S.W.3d 627, 636 (Mo. Ct. App. 2003). The alleged emotional distress must be "medically diagnosable and medically significant." Hendrix v. Wainwright Indus., 755 S.W.2d 411, 412 (Mo. Ct. App. 1998) (internal quotation omitted). Additionally, Cone must also have pled facts sufficient to establish that MCI's "sole intent in acting was to cause emotional distress." Cent. Mo. Elec. Coop., 119 S.W.3d at 636. Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and is "atrocious, and utterly intolerable in a civilized community." May v. Greater Kan. City Dental Soc'y, 863 S.W.2d 941, 948 (Mo. Ct. App. 1993) (internal quotation omitted).

As a federal district court in Missouri noted, "Missouri case law reveals very few factual scenarios sufficient to support a claim for" intentional infliction of

emotional distress.  Dunham v. City of O'Fallon, Mo., 945 F.Supp. 1256, 1262 (E.D. Mo. 1996).  Rarely is a defendant's conduct sufficiently extreme and outrageous to warrant recovery.  See Gibson v. Hummel, 688 S.W.2d 4, 7–8 (Mo. Ct. Ap. 1985) (listing cases where Missouri courts have not found conduct alleged to inflict emotional distress to be extreme and outrageous).  In Smith v. Standard Oil, 567 S.W.2d 412 (Mo. Ct. App. 1978), the Missouri Court of Appeals reversed a grant of denial of relief to a plaintiff who received a series of letters and phone calls from a creditor and a collection agency, noting that only one of the phone calls could be considered abusive and that this conduct was not sufficiently outrageous to warrant relief.  Id. at 416.

Cone relies on cases where Missouri courts allowed plaintiffs to recover because of defendants' outrageous debt-collection tactics.  In Warrem v. Parrish, 436 S.W.2d 670 (Mo. 1969), the defendant, in an attempt to collect a bill plaintiffs did not owe, "sequestered [plaintiffs'] auto for some three hours, during which time he publicly berated and threatened [them], knowing [one of the plaintiffs] was not well and was recuperating from an extended illness." Id. at 673. In contrast, MCI's debt-collection tactics in the case at hand did not involve sequestering Cone or public berating and threatening.  In Liberty Loan Corp. of Antioch v. Brown, 493 S.W.2d 664 (Mo. Ct. App. 1973), the court found the defendant's debt-collection tactics, which included repeatedly calling the plaintiff degrading names and threatening to harm her daughter, may have been extreme and outrageous; however, these tactics were far more egregious than those MCI employed in the present case.  Id. at 667. The district court correctly decided that MCI's conduct case did not rise to the level of being so extreme and outrageous so as to support a claim for intentional infliction of emotional distress.

III.    Conclusion

We affirm the district court's dismissal of KC Laser's and Cone's claims for negligent failure to supervise, intentional failure to supervise, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.

_____