WIRGES v. BREWER

5-3369                                              389 S. W. 2d 226

Opinion Delivered April 19, 1965.

*G. Thomas Eisele,* for appellant.

*Felver A. Rowell, Jr., Gordon & Gordon,* for appellee.

GEORGE ROSE SMITH, J. This is an action for libel brought by C. C. Brewer, the county clerk of Conway county, against Gene Wirges, the editor and publisher

of the Morrilton Democrat, a weekly newspaper. Wirges appeals from a verdict and judgment awarding Brewer compensatory damages of $50,000 and punitive damages of $25,000. (Brewer died while the appeal was pending; the cause has been revived in the name of his personal representative.)

Wirges urges a number of points for reversal, but we find it necessary to consider only his contention that he was entitled to a directed verdict on the ground that the two articles complained of were not libelous. We sustain this contention.

Brewer's complaint was based upon the publication of a news article and an editorial in the December 27, 1962, edition of the paper. That part of the news article complained of read as follows:

## "2 LAWSUITS ATTACK BALLOTS IN DEC. 4 SCHOOL ELECTION

"Two separate lawsuits have been filed in Circuit Court challenging the results in two districts of the Conway County School Election (December 4).

"Both suits were filed with Circuit Clerk Millard Richardson on Christmas Eve—the deadline for filing such legal actions.

"The first suit filed was that of Harding A. Byrd, candidate for East Side District No. 5 School Director, who charged that all absentee ballots cast in the district were illegal. Byrd's suit asks that he be certified as the winner of the election.

"Byrd, who faced Sammie Criswell for the School Board post, polled 200 votes to Criswell's 132 in the regular boxes, but lost the election when Criswell received a 143-9 majority of the 152 absentee votes.

"Byrd took his case to the Conway County Election Commission last week, but the commission voted 2-1 to certify Criswell the winner. Republican Chairman Stuart McLeod cast the dissenting vote.

"In his case taken to Circuit Court Wednesday, Byrd charged that all the absentee votes cast are illegal and invalid because they were not handled in the manner required by law.

"Byrd alleged that the absentee ballots were ' . . . . possessed, retained, distributed, received and delivered by persons unauthorized by law.' He also stated in his suit that the ballots were distributed without regard to the statutory procedure and were received without regard to whether the votes were valid.

"The second suit filed was that of Wayne Dunlap of Malletown, who was a candidate for Position No. 2 in Morrilton School District No. 32.

"Dunlap's suit contends that his petition for election was the only legal petition filed since it was the only petition which specified a position as the law provides. Dunlap's suit asks that he be certified as the winner of the election . . . ."

The editorial, which appeared under the caption, "Around the Hub," read as follows:

"Christmas and its traditional spirit notwithstanding, there seemed to be almost no charity in the hearts of folks responsible for handling of certain recent elections and, therefore, lawsuits were filed on Christmas Eve challenging some of the votes and voting procedures.

"Suits were filed in two districts—No. 5 and No. 32— and the reasons vary considerably.

"In District 32, for example, suit was brought against City Attorney Felver Rowell charging that a petition he filed was invalid because it was improperly drawn. If a ruling goes against Rowell, he would be booted off the Morrilton School Board.

"Strangely, the apparent improper filing was pointed out to the County Election Commission BEFORE the election. The State Board of Education said flatly the petitions were invalid.

320

"BUT the local Election Commission called in the petitioners with such petitions and drew lots for the positions to be sought.

"Asked if it was legal, Chairman Ed Gordon said he 'didn't know.' But the names went on the ballot anyway. Now the suit seeks to correct an unfortunate situation.

"Suit No. 2 charges that many, many illegal absentee votes were cast and asks that they be thrown out as such.

"Suit No. 2's language is mild, indeed. The DEMOCRAT pointed out a couple of weeks ago about the tremendous absentee vote in that district. One precinct had so many they almost doubled the number of 'local' votes.

"As a matter of fact, absentee votes changed the entire election in District 5. One candidate was leading by almost 70 votes on the basis of 'local' votes. Then the big lopsided Absentee Box came in with the other candidate (guess whose support he had?) getting over 90 per cent of the ballots and thereby winning the election.

"Best we could tell, local officials didn't even crack a smile when that tabulation was read, matter-of-fact like.

"Nobody, but nobody, holds elections like they do in Conway County. For the life of me, it doesn't appear to be anything to be proud of.

"AND a Happy New Year to you!

—Gene Wirges"

In *Studdard* v. *Trucks,* 31 Ark. 726, we drew this distinction between words that are actionable in themselves and words that are not: "Where the natural consequence of the words is a damage, as if they import a charge of having been guilty of a crime, or of having a contagious distemper, or if they are prejudicial to a person in office, or to a person of a profession or trade, they are in themselves actionable; in other cases, the party who brings an action for words, must show the damage which was received from them." When the words in question do not on their face appear to be libelous, or when they do not on their face appear to be applicable to the plaintiff, extrin-

sic evidence may be admissible to show that the plaintiff was in fact defamed by the communication. The function of that proof, however, is explanation; it cannot change the meaning of the words. Restatement, Torts, § 563.

It will be observed that neither of the publications complained of even mentioned Brewer or the office of county clerk. At the trial the plaintiff was permitted to introduce a number of other articles that had appeared in the Morrilton Democrat, for the purpose of showing that for some time Wirges had been critical of the Conway county public officers as a group. It is argued that since the county clerk's office is responsible for the distribution, receipt, and preservation of absentee ballots, the effect of the publications in question was to charge Brewer with having participated in an election fraud.

This extrinsic evidence, as we have said, cannot serve to enlarge or change the plain meaning of the language that was used. Nowhere in either the news article or the editorial is there a charge of corruption or wrongdoing on the part of anyone, much less of Brewer in particular. It is conceded that the news article was a fair and accurate summary of the complaints in the two election contests. Those pleadings unquestionably alleged irregularities in the conduct of the election, but to say that they charged dishonesty or fraud is to read a meaning into the words which simply is not there. If a newspaper cannot impartially report a matter of public interest such as these election contests, we hardly see how it can be said that freedom of the press really exists.

In overruling a demurrer to the complaint the trial judge stated that he considered this language in the editorial to be libelous: ''Then the big lopsided Absentee Box came in with the other candidate (guess whose support he had?) getting over 90 per cent of the ballots and thereby winning the election.'' According to the undisputed proof every statement of fact in this sentence was true. The absentee vote was big, it was lopsided, and it did win the election for the successful candidate. Truth, of course, is a complete defense to a charge of defamation such as

this one. *Waters-Pierce Oil Co.* v. *Birdwell,* 107 Ark. 310, 155 S.W. 126.

Counsel for the appellee insist that the parenthetical question—"guess whose support he had?"—was defamatory. In the first place, merely to charge a public officer with having supported some other candidate does not, in itself, involve any assertion of wrongdoing. Secondly, there is no indication in the proof that the parenthetical inquiry was understood by anyone as a reference to Brewer alone. It may have been intended as a reference to the entire group that Wirges considered to have controlling political power in the county, but an individual cannot complain of a statement about an indefinite class, especially when, as here, the statement is not actually libelous. *Comes* v. *Cruce,* 85 Ark. 79, 107 S.W. 185, 14 Ann. Cas. 327.

Reversed and dismissed.