# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1982

_____

L. Walter Quinn, III; Terry Quinn,      *
                                   *
         Appellants,             *
                                   *    Appeal from the United States
       v.                         *    District Court for the Eastern
                                     *    District of Arkansas.
Ocwen Federal Bank FSB;         *
Wilson & Associates, P.L.L.C.,     *    [PUBLISHED]
                                     *
         Appellees.               *

_____

Submitted: October 18, 2006
Filed: December 8, 2006

_____

Before MELLOY, BENTON, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

      L. Walter Quinn and Terry Quinn appeal the dismissal of their case for failure to state a claim upon which relief can be granted. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In August 2002, the Quinns mortgaged their home to Provident Bank, which is not a party to this litigation. The Quinns also executed an automated clearing house (ACH) authorization permitting Provident Bank, or its successors and assigns, to automatically withdraw the monthly mortgage payment from the Quinns' account at another bank. The ACH authorization provides that an automatic debit will occur on a specified day of the month, but in the next sentence, in all capital letters, places responsibility for payment on the account holder, who acknowledges:

> I AM RESPONSIBLE FOR MAKING PAYMENTS ON THE NOTE BY OTHER MEANS IF MY PAYMENT IS NOT DRAFTED ON THE DAY SPECIFIED NO MATTER THE CAUSE.

In October 2002, Provident Bank sold the Quinns' mortgage to Wells Fargo, which engaged Ocwen Federal Bank to service the loan. The Quinns did not execute another ACH authorization permitting Wells Fargo or Ocwen to withdraw from any bank account. Through a series of discussions during the rest of 2002, the Quinns demanded that Ocwen use the ACH authorization (naming Provident Bank or its successors and assigns) to withdraw the monthly mortgage payment from the Quinns' bank account. During this period, the Quinns periodically paid the mortgage by personal check.

On January 13, 2003, Walter Quinn wrote Ocwen stating that an ACH authorization previously had been executed by the Quinns authorizing Provident Bank, or its successors and assigns, to automatically withdraw the monthly mortgage payment. Mr. Quinn further stated that had he known the payment would not be

drafted pursuant to the previous ACH authorization, he would have made payment as scheduled. Mr. Quinn also requested that Ocwen take any steps necessary to reverse derogatory reports issued to credit reporting agencies.

Ocwen answered on January 24, writing that it had not made an adverse report to any credit reporting agency about late payment of the mortgage. Ocwen further stated the loan was set up on the ACH program, and the first automatic withdraw is effective on February 15. Ocwen also informed the Quinns that when the servicing of a loan is transferred to Ocwen, automatic draft information is not transferred, and a new application is necessary to begin an automatic draft program with Ocwen. "While Ocwen advised that a new ACH automatic draft application was necessary to begin the automatic draft program with Ocwen, the Quinns had advised Ocwen that they would not be executing a new ACH authorization since the ACH authorization the Quinns executed in favor of Provident had already been assigned to Ocwen." (Complaint ¶ 9).

By June 2003, the mortgage had not been paid in any way for the months of March, April and May. The Quinns agreed to pay for these months via personal check. Subsequently, the mortgage payments for June, July and August were not paid by ACH withdraw or by check.

In August 2003, Ocwen notified the Quinns that their account was transferred to Ocwen's Early Intervention Department, and if necessary, the loan may transfer to the Foreclosure Department. The Quinns did not dispute the validity of the debt, but notified Ocwen that they would make no further payments unless Ocwen used the ACH authorization previously executed naming Provident, or its successors and assigns. Correspondence continued throughout the fall.

By November 2003, no mortgage payment had been made by ACH withdraw or by check since June 2003. The mortgagee, Wells Fargo, by its counsel, Wilson & Associates ("Wilson"), notified the Quinns that a foreclosure sale would take place in December. Additionally, pursuant to the Arkansas foreclosure statute, Wilson, on behalf of Wells Fargo, filed a Notice of Default and Intention to Sell. Later, the foreclosure sale was cancelled, and the Quinns refinanced their mortgage with another lender.

In June 2004, the Quinns sued Ocwen and Wilson in Arkansas state court asserting six claims under state and federal law: Count I, Breach of Contract against Ocwen; Count II, Negligence against Ocwen; Count III, Defamation against Ocwen; Count IV, Violation of Fair Debt Collection Practices Act against Ocwen and Wilson; Count V, Violation of Arkansas statute against Ocwen and Wilson; Count VI, Equitable Relief to Remove Cloud on Title against Ocwen and Wilson. The case was removed to federal court under federal question jurisdiction. Both Ocwen and Wilson moved to dismiss for failure to state a claim. The district court[1] granted their motions, dismissing all claims with prejudice.

II.

This court reviews *de novo* the grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and affirms only if plaintiffs can prove no set of facts entitling them to relief. *Botten v. Shorma*, 440 F.3d 979, 980 (8th Cir. 2006). This court assumes as true all factual allegations of the complaint. *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). "However,

---

[1]The Honorable Rodney S. Webb, United States District Court for the District of North Dakota, sitting by designation.

the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002). Further, written instruments attached to the complaint become part of it for all purposes. *See Fed. R. Civ. P. 10(c).* "For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint." *Abels*, 259 F.3d at 921. Consequently, the factual allegations here are taken from plaintiffs' complaint, including its attachments.

A.      Breach of Contract Under Arkansas Law.

The original ACH authorization between the Quinns and Provident is clear. It authorizes Provident, or its successors and assigns, to withdraw the monthly mortgage payment from the Quinns' bank account. In the ACH authorization document, Provident makes no promise to transfer the authorization to a buyer or assignee of the mortgage. *Williamson v. Sanofi Winthrop Pharm., Inc.,* 60 S.W.3d 428, 434 (Ark. 2001) ("it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators").

In the ACH authorization document, the account holder (the Quinns) assume certain duties. The Quinns agree: "I will provide the Financial Institution with all documents that the Financial Institution may require to implement the automatic deduction of my monthly payments." Additionally, the Quinns accept responsibility "FOR MAKING PAYMENTS ON THE NOTE BY OTHER MEANS IF MY PAYMENT IS NOT DRAFTED ON THE DAY SPECIFIED NO MATTER THE CAUSE." Provident, by the terms of the ACH authorization, had no duty to assign the authorization to a buyer or assignee of the mortgage.

The Quinns claim that they have a contract with Wells Fargo's servicing agent, Ocwen, that constitutes an ACH authorization. The district court ruled that there was no contract under Arkansas law, because there was no mutual assent between Ocwen and the Quinns to an ACH authorization, and because the correspondence and discussions did not produce a new agreement. *See Quinn v. Ocwen Fed. Bank, FSB*, No. 04-CV-00678-RSW (E.D. Ark. Feb. 2, 2006).

There is no express ACH authorization between the Quinns and Ocwen. The Quinns emphasize Ocwen's letter of January 24, 2003, which does state that the loan "has been set up on the ACH program." However, the Quinns ignore the later sentences of the same paragraph of the January 24 letter:

> When the servicing of a loan is transferred to Ocwen, automatic draft information is not transferred with the loan. A new application is necessary to begin an automatic draft program with Ocwen.

As the complaint says:

> While Ocwen advised that a new ACH automatic draft application was necessary to begin the automatic draft program with Ocwen, the Quinns had advised Ocwen that they would not be executing a new ACH authorization since the ACH authorization the Quinns executed in favor of Provident had already been assigned to Ocwen.

Because the Quinns cannot show the existence of a valid contract with Ocwen, they can prove no set of facts entitling them to relief, and the district court properly dismissed their breach of contract claim.

B.      Negligence Under Arkansas Law.

The Quinns assert Ocwen owed a duty to draft their bank account and negligently failed to do so, pursuant to the ACH authorization. "In order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed the plaintiff under the circumstances surrounding them." *Shannon v. Wilson*, 947 S.W.2d 349, 356 (Ark. 1997). "The law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached." *Young v. Paxton*, 873 S.W.2d 546, 549 (Ark. 1994).

As discussed, taking as true all factual allegations of the complaint, the Quinns cannot show that Ocwen owed a legal duty to debit the Quinns' bank account under the ACH authorization. Their negligence claim was correctly dismissed.

C.      Defamation Under Arkansas Law.

Taking the Quinns' factual assertions as true, after sporadically paying their mortgage via personal check for several months, they made the last monthly payment in June 2003. In August when the mortgage was two months in arrears, the Quinns notified Ocwen that they would make no further payment, unless Ocwen used the ACH authorization. By October, Ocwen reported credit information to TransUnion, Experian and/or Equifax, which are national credit reporting agencies. In November, after months of discussion and when the mortgage was five month in arrears, Wells Fargo notified the Quinns that a foreclosure sale was scheduled for December 2003.

The Quinns state that Ocwen's adverse credit reports constitute the tort of defamation. Under Arkansas law, among other elements, the Quinns must show fault

in publication of a defamatory statement as well as the statement's falsity. *Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 402 (Ark. 2002). Truth is a complete defense to a charge of defamation. *Wirges v. Brewer*, 389 S.W.2d 226, 228 (Ark. 1965). Further, "the exact truth is not required. It is now generally agreed that it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting' or the 'substantial truth.'" *Pritchard v. Times Southwest Broad., Inc.*, 642 S.W.2d 877, 879 (Ark. 1983) (internal citation omitted).

In the present case, Ocwen's report to credit agencies regarding the course of payment, or non-payment, of the mortgage is truthful. No set of facts consistent with the Quinns' allegations would entitle them to relief for defamation. This claim was rightfully dismissed.

D.      Violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

The Quinns assert violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., against Ocwen and Wilson for not using the ACH authorization and for filing the Notice of Default and Intent to Sell. "The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage. 15 U.S.C. § 1692(e)" *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir. 2002). The Act prohibits, *inter alia*, "the use or threat of violence, obscene language, publication of shame lists, and harassing or anonymous telephone calls. 15 U.S.C. § 1692d." *Id.* Debt collectors cannot use false, deceptive, misleading, unfair or unconscionable means to collect or attempt to collect a debt. *Id.* (citing 15 U.S.C. §§ 1692e, 1692f).

In this case, the Quinns do not dispute the amount or validity of the mortgage debt and do not attribute to Ocwen or Wilson acts prohibited by the FDCPA. There is no factual assertion whatsoever that the Quinns suffered abusive collection practices. To the contrary, Ocwen was not obligated to use the ACH authorization, and as discussed below, the Notice of Default and Intent to Sell properly was filed by Wilson, as counsel for Wells Fargo. Therefore, the factual allegations of the complaint show that the Quinns can prove no set of facts entitling them to relief under the FDCPA. Consequently, dismissal of the FDCPA claim was appropriate.

E.      Violation of Arkansas Code § 5-37-226.

The Quinns assert that Ocwen and Wilson violated Arkansas Code § 5-37-226 by filing the Mortgagee's Notice of Default and Intention to Sell ("Notice"). Section 5-37-226(a) prohibits any person from filing an instrument adversely affecting a title or interest in real property with knowledge of the instrument's lack of authenticity or genuineness, and with intent of improperly hindering the true owner. Section 5-37-226(d), however, provides: "The provisions of this section shall not apply to bona fide filings of ... legitimate notice and protective filings as provided by law." Bona fide filing of a mortgagee's notice of default and intention to sell, therefore, does not violate Arkansas Code § 5-37-226.

In the present case, the Notice is a bona fide filing of a legitimate notice or a protective filing. Specifically, Arkansas Code § 18-50-103 requires a mortgagee, in this case Wells Fargo,[2] to file a notice of default and intention to sell with the recorder

_____

[2]Before the motions to dismiss were granted, the Quinns moved to amend the complaint in order to include Wells Fargo. The district court denied the motion as moot. The Quinns do not appeal this determination; denial of the motion to amend

of the county where the mortgaged property is located. According to the factual allegations of the complaint, mortgage payments ceased in June 2003, and in October 2003, Wells Fargo, by counsel Wilson, filed the Notice of Default and Intention to Sell. As required by § 18-50-104, Wilson mailed the Notice to the Quinns in November 2003. Because the factual allegations show the bona fide status of the Notice, which thus does not violate § 5-37-226, the Quinns can prove no set of facts entitling them to relief, and this claim was properly dismissed as to Ocwen.[3]

As to Wilson's filing of the Notice, Wilson & Associates is a law firm retained by Wells Fargo to conduct the statutory foreclosure. There is no privity of contract between Wilson and the Quinns. Under Arkansas law, Wilson cannot be held liable to the Quinns for (non-privity) professional services rendered, including the filing of the Notice. In Arkansas, for conduct in connection with professional services, an attorney enjoys immunity from actions brought by persons not in privity. *Fleming v. Cox Law Firm*, __S.W.3d__, 363 Ark. 17, 2005WL1485216 at *2 (Ark. June 23, 2005); *Ark. Code Ann. §§16-22-310, 16-114-303*. Further, in the present case, the Quinns have not pled fraud or intentional misrepresentation that might render Wilson liable to suit. *Fleming*, __S.W.3d__, 2005WL1485216 at *2. Therefore, grant of the motion to dismiss as concerns Wilson was warranted.

---

is not before this court.

[3]Ocwen did not file the Notice. The Notice was filed by Wilson, as counsel for Wells Fargo.

F.     Equitable Relief to Remove Cloud on Title.

The Quinns assert that filing of the Notice created a cloud on their title.  They seek equitable relief to remove it.  Under the Arkansas statute, the mortgagee is empowered to file a notice of default and intention to sell.  *Ark. Code Ann. §§ 18-50-101, 103, 104.*  The factual assertions of the complaint show that in November 2003, Wilson, as counsel for Wells Fargo, notified the Quinns that Wilson filed the Notice on behalf of the mortgagee, Wells Fargo.

In December 2003, after the filing of the Notice and before the foreclosure sale, the Quinns refinanced the mortgage with another lender.  Section 18-50-114 provides: "If the default is cured and the mortgage or deed of trust reinstated ..., the mortgagee, beneficiary, or their successors in interest shall file for record with the recorder of the county ... a duly acknowledged cancellation of the recorded notice of default and intention to sell under such mortgage or deed of trust."  *Ark. Code Ann. § 18-50-114(b).*

In this case, the mortgagee is Wells Fargo.  Wells Fargo is not a party in this case, and any claim against it (in law or equity) is not before this court.  Any successor to Wells Fargo is also not a party in this case, and no claim (in law or equity) against it is before this court.

The Quinns bring the equitable claim against Ocwen and Wilson. Ocwen, pursuant to Arkansas statutory foreclosure § 18-50-114, is not the mortgagee, beneficiary, or their successor in interest and is not empowered to file a duly acknowledged cancellation of the Notice.  *Ark. Code Ann. §§ 18-50-101, 18-50-114.*

Further, Ocwen did not file the Notice that the Quinns assert clouded title. Ocwen is not a proper defendant to this claim, which was properly dismissed as to it.

Wilson is the law firm retained by the mortgagee, Wells Fargo, to conduct the statutory foreclosure. There is no privity of contract between the Quinns and Wilson. Under Arkansas Code § 16-22-310 and § 16-114-303, "[e]xcepting actions where there is privity, attorneys enjoy immunity from suit related to professional activities." *Fleming v. Cox Law Firm*, __S.W.3d__, 363 Ark. 17, 2005WL1485216 at *2 (Ark. June 23, 2005). Moreover, the privity requirement of Section 16-22-310 may not be bypassed by couching as equitable a claim against an attorney for professional conduct. *Jackson v. Ivory*, 120 S.W.3d 587, 596 (Ark. 2003) (equitable claim of estoppel barred by Ark. Code Ann. § 16-22-310); *Great Am. Ins. Co. v. Dover, Dixon Horne, P.L.L.C.*, 456 F.3d 909, 912 (8th Cir. 2006) (claim of equitable subrogation barred by Ark. Code Ann. § 16-22-310). Additionally, Section 16-22-310 explicitly states that Arkansas' Statutory Foreclosure Act, § 18-50-101 *et seq.*, "shall not expand the liability of the attorney, the entity or partnership employing the attorney, or the firm in which the attorney is a member or partner." *Ark. Code Ann. § 16-22-310(c).* Because privity of contract does not exist between the Quinns and Wilson, and because the Quinns can prove no set of facts that would entitle them to relief, the district court appropriately dismissed the equitable claim as to Wilson.

G. State Law Claims.

The Quinns assert that the district court erred in dismissing their state law claims with prejudice, as opposed to without prejudice. Prior to the district court's judgment, the Quinns did not move the district court to decline supplemental jurisdiction if it dismissed the federal claims. After full briefing, the district court entered a single order dismissing all counts for failure to state a claim.

-12-

This case was removed to the federal district court under federal question jurisdiction. *28 U.S.C. § 1331*. The district court possessed supplemental jurisdiction over the state law claims. *28 U.S.C. § 1367*. The six claims brought by the Quinns against Ocwen and Wilson derive from a common nucleus of operative fact, and if considered without regard to their federal or state character, are such that they ordinarily would be expected to be adjudicated in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *S. Council of Indus. Workers v. Ford*, 83 F.3d 966, 969 (8th Cir. 1996). Further, jurisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was predicated. *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067-68 (8th Cir. 1996). Additionally, the state law claims in this case concern well-settled principles of contract, tort, statute and equity. *See Birchem v. Knights of Columbus*, 116 F.3d 310, 315 (8th Cir. 1997) (affirming summary judgment of state law claims of breach of contract and tort).

It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim. *Kan. Pub. Employees Ret. Sys.*, 77 F.3d at 1067-68. Balancing factors such as judicial economy, convenience, fairness and comity in regard to exercise of supplemental jurisdiction over pendent state law claims, the district court did not err in determining all claims, given the factual allegations and admissions of the Quinns' complaint. *See Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 993 (8th Cir. 1999).

III.

The judgment of the district court is affirmed.

_____