# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 12-3625

———————————————

Dave Thomas

*Plaintiff - Appellant*

v.

United Steelworkers Local 1938; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union; John Malek[1]

*Defendants - Appellees*

——————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————

Submitted: October 23, 2013
Filed: February 20, 2014

——————

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

——————

SHEPHERD, Circuit Judge.

Dave Thomas appeals the district court's grant of summary judgment in favor of United Steelworkers Local 1938 (Local 1938); United Steel, Paper and Forestry,

---

[1]Mr. Malek's signed declaration indicates that the accurate spelling of his first name is Jon, not John as indicated in Dave Thomas's second amended complaint.

Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW);[2] and Jon Malek on Thomas's state-law defamation claim arising out of a fact-finding meeting concerning a workplace dispute. For the reasons stated below, we reverse and remand.

I.

A.

Thomas is an employee of United States Steel (USS), a steel company that operates and owns several iron ore mines. Thomas works in the pit[3] at USS's Minntac facility in Mountain Iron, Minnesota and has been a member of USW and Local 1938 since he began his employment in 1973. In 2003, Thomas was assigned team leader duties in the pit and performed these duties until his removal in 2009. As a team leader, Thomas was responsible for assisting the shift managers in working with the crews.

While a team leader, Thomas worked under two area managers—Lou Janezich from 2003 to 2008 and Mike Sterk from 2008 to 2009. During his time as area manager, Janezich recalls only receiving one complaint about Thomas's treatment of his crew. Sterk testified that the only complaint he received about Thomas while area manager was in regard to an incident occurring on April 4, 2009 between Thomas and one of his crew drivers, Roy Varani. On that day, Thomas scolded Varani for not following the company's safety procedure. Specifically, Thomas and Varani began yelling at each other and Thomas eventually told Varani, "No wonder the crew said you were a dumb f---ing truck driver."

---

[2]Local 1938 is the local union chartered by USW to carry out certain functions at the Minntac facility.

[3]The pit is separate from the Minntac facility and is approximately 10 to 15 miles long and 5 to 6 miles wide.

Varani reported the incident as harassment, and a fact-finding meeting was called by Sterk on April 6, 2009, to determine what happened. The meeting was attended by Sterk, crew member Dan Sixberry, USS Labor Relations department representatives Nicholas Simonson and Katrina Dononvan, vice president of Local 1938 Jon Malek, USS employee and Local 1938 grievance representative Jake Schmelzer, and USS assistant area manager Jason Croteau. Varani, Sixberry, and Thomas met with the team of representatives separately.

During the meeting, Varani stated that he and Thomas had apologized and that he did not believe Thomas had harassed him on the day of the incident. Thomas related what happened between him and Varani and indicated that it was an isolated incident. Malek then replied that he had received "20 complaints on Dave Thomas." Malek also said "[Thomas] has been verbally abusive to others for the past five years," "[Thomas has] been making threats and throwing his weight around for the past five years," "[Thomas] and two other team leaders in the Pit are the biggest complaints I get," "[Thomas] is an absolute prick," "I'm tired of [Thomas's] crap," and "I'm not going to put up with [Thomas's] sh-- anymore." Thomas also remembers Malek stating at the meeting that "if I had it my way [Thomas] would be off the property."

Two days after the meeting, Thomas was removed from his position as team leader. Although Thomas was reassigned to the position in 2010, Sterk received a call from Malek, in which Malek claimed to have received three anonymous phone calls from individuals complaining about Thomas's reassignment. Malek said that the reassignment would cause problems, and Sterk removed Thomas again. Thomas filed an internal union complaint against Malek in April 2010 claiming unfair representation.

B.

After learning that both unions declined to do any further investigation as to the complaint, Thomas brought this action. In his second amended complaint, Thomas asserted the following claims against the defendants:[4] (1) violation of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401, et seq.; (2) breach of fair representation under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a); (3) violation of the Minnesota Whistleblower Act,[5] Minn. Stat. § 181.932, Subd. 1; and (4) state-law claims of defamation, tortious interference with contract, and conspiracy. The defendants filed a motion for summary judgment on all of the claims. In his memorandum in opposition to the motion, Thomas stated "the CBA is not implicated in any of Plaintiff's claims and as such [he is] dismissing all claims except the defamation claim and the breach of the union constitution claim."[6] See Memorandum in Opposition to Motions for Summary Judgment 34.

In its order granting the defendants' motion for summary judgment and dismissing the second amended complaint, the district court acknowledged Thomas's admission that the CBA was not implicated and that he was therefore dismissing all of his claims except the defamation claim and the breach of union constitution claim. The court, accordingly, only discussed the remaining claims at issue. First, the court found that the breach of union constitution claim was not properly before the court

[4]All claims against USS were dismissed with prejudice pursuant to the parties' stipulation, and USS was terminated from the action.

[5]The district court dismissed the Whistleblower claim with prejudice based on the report and recommendation of a magistrate judge and the stipulation by the parties.

[6]CBA references the collective bargaining agreement between USW and USS.

as it was not raised in Thomas's second amended complaint, and the court denied further leave to amend the complaint. Second, the court determined that Malek's alleged defamatory statements were conditionally privileged because the statements were made in the context of an investigation into whether Thomas should continue to perform lead duties and were based on "reasonable or probable grounds." The court also found that Thomas failed to overcome the privilege because Thomas presented no evidence showing Malek acted with actual malice. Finally, the court concluded that the defamation claim was without merit because Thomas failed to prove that Malek did not actually receive complaints on Thomas and many of the statements made were not actionable. Thomas now appeals the district court's grant of summary judgment dismissing his defamation claim.

II.

A.

Although not raised by the parties, a threshold question in this appeal is whether the district court maintained subject matter jurisdiction in this case. We have an obligation to consider sua sponte both our jurisdiction to entertain a case and the jurisdiction of the district court. Robins v. Ritchie, 631 F.3d 919, 924 (8th Cir. 2011). Accordingly, we must raise jurisdictional issues "when there is an indication that jurisdiction is lacking, even if the parties concede the issue." Thomas v. Basham, 931 F.2d 521, 523 (8th Cir. 1991). Due to (1) Thomas's statement in his memorandum in opposition to summary judgment that he was "dismissing all claims except the defamation claim and the breach of the union constitution claim," (2) the district court's denial of leave to amend the second amended compliant to add the federal breach of union constitution claim,[7] and (3) the inapplicability of diversity

---

[7]Although section 301 of the Labor Management Relations Act extends federal question jurisdiction to breach of the union constitution claims, Wooddell v. International Brotherhood of Electrical Workers, Local 71, 502 U.S. 93, 101 (1991), the district court rejected Thomas's late attempt to add this claim as it had not been

jurisdiction, we asked the parties to brief whether the district court properly exercised federal subject matter jurisdiction over the state-law defamation claim. After thorough review, we conclude that despite Thomas's statement of dismissal, the district court maintained its subject matter jurisdiction and properly exercised its supplemental jurisdiction over Thomas's state-law claim.

In response to our jurisdictional inquiry, Thomas claims that his statement in his memorandum in opposition to the appellants' motion for summary judgment—that he was "dismissing all claims except the defamation claim and the breach of union constitution claim"—removed all the federal claims on which the court based its subject matter jurisdiction. To support his position, Thomas cites cases holding that when a plaintiff amends his complaint and omits the federal claim that originally gave rise to the federal court's federal question jurisdiction, the court must dismiss the complaint for lack of subject matter jurisdiction. See Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."); see also Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243-44 (11th Cir. 2007) (concluding that plaintiff's failure to include in his amended complaint federal claims initially asserted in his original complaint destroyed the district court's jurisdiction, and the district court should have dismissed the state claims without prejudice); Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985). We find these cases inapplicable to the circumstances before us because the plaintiff in each of these cases filed an amended complaint that omitted the federal causes of action initially asserted. This did not happen here, and this distinction is critical.

Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question

properly pleaded in Thomas's complaint.

subject matter jurisdiction. <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). When a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect. <u>In re Atlas Van Lines, Inc.</u>, 209 F.3d 1064, 1067 (8th Cir. 2000). As such, we "resolve questions of subject matter jurisdiction by examining the face of the amended complaint." <u>Id.</u> Here, Thomas was given leave from the court to file two amended complaints; however, each complaint, and more importantly the second amended complaint, reasserted his federal causes of actions—violation of the Labor Management Reporting and Disclosure Act and breach of duty of fair representation under the Labor Management Relations Act. No further amended complaints were filed, and we are not persuaded that an attempt to dismiss federal claims in a memorandum in opposition to a motion for summary judgment is the equivalent of filing an amended complaint because such act does not satisfy the requirements of Federal Rule of Civil Procedure 15.

Rule 15 governs when and how a plaintiff may amend his complaint. Prior to trial, a plaintiff may do so as a matter of course within 21 days of serving the complaint. Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with *the opposing party's written consent or the court's leave*." Fed. R. Civ. P. 15(a)(2) (emphasis added). Leave to amend shall be freely given when justice so requires, <u>see</u> Fed. R. Civ. P. 15(a)(2), but the plaintiff must follow proper procedures. <u>See</u> <u>In re 2007 Novastar Fin. Inc., Sec. Litig.</u>, 579 F.3d 878, 884 (8th Cir. 2009). Although we have not specifically addressed whether a plaintiff may amend his complaint through a memorandum or brief, we find the opinions of other circuit courts addressing this issue instructive and persuasive. <u>See, e.g.</u>, <u>Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott</u>, 717 F.3d 851, 863 (11th Cir. 2013) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment or one advocating summary judgment." (internal quotation marks omitted)); <u>S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC</u>, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); <u>Anderson v. Donahoe</u>, 699 F.3d 989,

997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (internal quotation marks omitted)).

We conclude that Thomas could not unilaterally dismiss or withdraw his federal claims in a memorandum in opposition to a motion for summary judgment so as to strip the court of its jurisdiction. After 21 days had passed from the filing of his second amended complaint, Thomas was required to either obtain the consent of the opposing parties or seek the permission of the district court if he wanted to amend his complaint to remove certain claims. See Fed. R. Civ. P. 15(a). We therefore hold that because Thomas failed to follow Rule 15's procedures and nothing in the district court's order or the record suggests that leave to amend the complaint was granted, the federal claims were not withdrawn from the second amended complaint and remained before the district court until those claims were dismissed by the court in its order. See Thomas v. United Steelworkers Local 1938, Civil No. 11-839 (DWF/LIB), 2012 WL 4758360, at *8 (D. Minn. Oct. 5, 2012) ("IT IS HEREBY ORDERED that: . . . Thomas's Second Amended Complaint . . . is DISMISSED WITH PREJUDICE.").[8]

---

[8]Even though the federal claims were not specifically discussed by the district court, the text of the order dismissing Thomas's second amended complaint reflects an intent to dispose of the entire action, including those claims. Thus, our appellate jurisdiction is not affected by the district court's lack of discussion of the federal claims. See Cook v. City of Bella Villa, 582 F.3d 840, 852-53 (8th Cir. 2009); see also Acton v. City of Columbia, Mo., 436 F.3d 969, 975 (8th Cir. 2006); DIRECTV, Inc. v. Budden, 420 F.3d 521, 524 (5th Cir. 2005).

We construe Thomas's purported dismissal[9] as a declaration that he was abandoning all claims except the defamation and breach of union constitution claims and would present no further evidence or argument supporting those abandoned claims. See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); see also Allen v. Missouri, No. 4:11-CV-2224-JAR, 2013 WL 2156259, at *12 (E.D. Mo. May 17, 2013) (construing plaintiff's failure to respond to the defendant's motion regarding some of the claims as plaintiff's abandonment of those claims); United States v. NHC Health Care Corp., 163 F. Supp. 2d 1051, 1058-59 (W.D. Mo. 2001) (finding that the plaintiff abandoned certain claims by failing to address those claims in response to defendant's motion for summary judgment). Therefore, the claims were merely abandoned for purposes of argument, not removed from the second amended complaint.

B.

Having determined that the district court had subject matter jurisdiction, we further conclude that the district court properly exercised supplemental jurisdiction over Thomas's state-law defamation claim. "Under 28 U.S.C. § 1367, in any civil action in which the district courts have original jurisdiction, they shall also have supplemental jurisdiction over all other claims so related to the claims in the original jurisdiction that they form part of the same case or controversy." Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000). If the district court dismisses every claim over which it had original jurisdiction, the court maintains its broad discretion to exercise supplemental jurisdiction over any remaining state-law claims. Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1249 (8th Cir. 2006) ("It is within the district court's

---

[9]We need not decide whether Thomas's attempt to dismiss only some of his claims, rather than the entire action, is governed by Federal Rule of Civil Procedure 41. Like Rule 15, Rule 41 has specific procedures in place for voluntary dismissals, none of which were followed here. See Fed. R. Civ. P. 41(a).

discretion to exercise supplemental jurisdiction after dismissal of the federal claim." (citing Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc., 77 F.3d 1063, 1068 (8th Cir. 1996))). Given the substantial amount of time and judicial resources expended in this case and the well-settled principles of state law concerning defamation, we find no error in the district court's exercise of supplemental jurisdiction over Thomas's defamation claim, dismissing the claim on the merits. See Quinn, 470 F.3d at 1249; Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990).

We conclude that the district court had subject matter jurisdiction to hear Thomas's case and properly exercised supplemental jurisdiction over Thomas's defamation claim. We now proceed to the merits of Thomas's defamation claim, the sole issue appealed.

III.

Thomas argues that, for summary judgment purposes, he presented sufficient evidence to satisfy the elements of defamation. Specifically, Thomas contends that Malek's statements were defamatory and that evidence exists creating a genuine issue of material fact as to the truth of Malek's statements. Thomas also maintains that the statements made by Malek during the fact-finding meeting were not protected under a qualified privilege, and, even if protected, the privilege was nullified because Malek acted with actual malice. We address each argument in turn and review de novo the district court's grant of summary judgment. Keiran v. Home Capital, Inc., 720 F.3d 721, 725 (8th Cir. 2013). Viewing the record in the light most favorable to the nonmoving party, summary judgment is appropriate "'[w]here there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party.'" Quinn v. St. Louis Cnty., 653 F.3d 745, 750 (8th Cir. 2011) (quoting Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010)). Because we

conclude that genuine disputes of material fact exist, we reverse the district court's grant of summary judgment on Thomas's defamation claim and remand.

"Defamation under Minnesota law requires proof that the alleged defamatory statement (1) was communicated to someone other than the plaintiff, (2) was false, and (3) tended to harm the plaintiff's reputation and lower [the plaintiff] in the estimation of the community." Chambers v. Travelers Cos., 668 F.3d 559, 564 (8th Cir. 2012) (citing Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919-20 (Minn. 2009)). "If the defamation 'affect[s] the plaintiff in his business, trade, profession, office or calling,' it is defamation per se . . . ." Bahr, 766 N.W.2d at 920 (alteration in original) (quoting Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980)). "'Defamatory per se' means that damages are presumed and thus recoverable without proof of actual harm to reputation." Schlieman v. Gannett Minn. Broad., Inc., 637 N.W.2d 297, 307 (Minn. Ct. App. 2001) (citing Becker v. Alloy Hardfacing & Eng'g Co., 401 N.W.2d 655, 661 (Minn. 1987)). Because the statements were made before company and union representatives and concerned Thomas's activities in his profession, we hold that the first and third elements, third party communication and harm to reputation respectively, are satisfied.

To satisfy the falsity element of a defamation claim under Minnesota law, "a plaintiff must make an initial demonstration that there is a material dispute as to the truth or falsity of the statements at issue," Weinberger v. Maplewood Review, 668 N.W.2d 667, 680 (Minn. 2003), and "'[o]nly statements that present or imply the existence of fact that can be proven true or false are actionable.'" Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1147 (8th Cir. 2012) (alteration in original) (quoting Schlieman, 637 N.W.2d at 308). For instance, "[i]f it is plain that the speaker is expressing a 'subjective view, an interpretation, a theory, conjecture, or surmise,' rather than claiming to be in possession of 'objectively verifiable facts,' the statement is not actionable." Id. (quoting Schlieman, 637 N.W.2d at 308). Whether a statement is an opinion or fact is a matter of law, Lund v. Chi. & Nw. Transp. Co.,

467 N.W.2d 366, 369 (Minn. Ct. App. 1991), but "the truth or falsity of a statement is inherently within the province of a jury." Kuechle v. Life's Companion P.C.A., Inc., 653 N.W.2d 214, 218 (Minn. Ct. App. 2002). "'[T]rue statements, however disparaging, are not actionable.'" McKee v. Laurion, 825 N.W.2d 725, 730 (Minn. 2013) (quoting Stuempges, 297 N.W.2d at 255).

We agree with the district court that Malek's statements that "Thomas is a prick," "he is tired of [Thomas's] crap," and he "is not going to put up with his sh-- anymore" are all statements of Malek's subjective view or opinion and, by themselves, are not actionable as a matter of law. See McKee, 825 N.W.2d at 733; see also Lund, 467 N.W.2d at 369 (holding that statements at issue were protected expressions of opinion because they lacked specificity and precision, and the factual implications concerning such statements were unclear). We do not, however, agree with the district court's conclusion as it relates to the remaining statements.

Malek's statements that he had received "20 complaints on Dave Thomas," "[Thomas] has been verbally abusive to others for the past five years," and "[Thomas has] been making threats and throwing his weight around for the past five years," are all statements asserting that Thomas had been harassing his crew for at least five years. It is of no consequence that Malek's statements included adjectives and characteristics rather than specific acts. See Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. Ct. App. 2000) ("Epithets or adjectives can constitute defamation if they imply a specific type of reprehensible conduct." (internal quotation marks omitted)). Furthermore, these statements are capable of being proven false. During Malek's deposition, Malek could only recall seven complaints he had received about Thomas, none of which involved Thomas making any threats to his crew. Moreover, only one of the seven recalled complaints referenced Thomas's alleged use

-12-

of abusive language,[10] yet Malek suggested at the fact-finding meeting that Thomas had been verbally abusive for the last five years. The majority of the complaints recalled involved issues with Thomas's overtime assignment rather than issues of harassment. This information casts serious doubt as to the truth of Malek's statements altogether. Although we are aware that Minnesota courts have held "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting," of the defaming statement can be justified, McKee, 825 N.W.2d at 730 (internal quotation marks omitted)), the inaccuracies here are substantial enough to create a genuine dispute of material fact as to their truth. We cannot say that Malek's statements were essentially true in substance. Thus, Thomas has shown that genuine disputes of material fact exist regarding the element of falsity and this is enough to make these statements actionable.

The remaining issue is whether Malek's defamatory statements were subject to a qualified privilege. Thomas argues that no privilege existed for Malek's statements because the statements were not made in keeping with the purpose of the meeting, and Malek did not have reasonable or probable grounds for making such statements. We agree.

A defendant's statements may be entitled to a qualified privilege if the defendant made the alleged defamatory statements "in good faith and . . . upon a proper occasion, from a proper motive, and . . . based upon reasonable or probable cause." Bol v. Cole, 561 N.W.2d 143, 149 (Minn. 1997) (internal quotation marks omitted). Indeed, "[s]tatements made in the course of investigating or punishing employee misconduct are generally privileged." Sherman v. Rinchem Co., 687 F.3d 996, 1008 (8th Cir. 2012) (internal quotation marks omitted). This privilege equally

---

[10]Malek referenced another complaint regarding Thomas's use of the "F bomb," but admits that the word may not have been used in an abusive manner because it was a word commonly used at the plant.

-13-

applies to the communications of the employer's agents. See McBride v. Sears, Roebuck & Co., 235 N.W.2d 371, 374 (Minn. 1975). However, here, we conclude that the narrow investigation of one incident between Varani and Thomas was not the proper occasion for Malek to make statements about Thomas's alleged previous behavior. Thomas presented overwhelming evidence supporting the fact that the sole purpose of the fact-finding meeting was to determine whether Varani had been harassed by Thomas, not, as the district court erroneously concluded, to consider whether Thomas should remain team leader or to consider union complaints made against Thomas. In fact, Sterk testified that he called the meeting solely to determine the facts of the alleged harassment on April 4th and that Malek's statements were outside that purpose.

Even assuming that the meeting was the proper occasion to bring up other incidents relating to Thomas's work behavior, Malek's failure to investigate any of the complaints prior to making his statements prevents such statements from being based upon reasonable or probable cause. The speaker asserting a privilege "must also have reasonable or probable grounds for believing in the validity of the statement." Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 380 (Minn. 1990). "[A]n employer who takes no steps to investigate but relies entirely on accusations either made by employees who may be biased or on second-hand hearsay with no identification of sources, has not acted as a reasonably prudent person and lacks probable or reasonable grounds for making a potentially defamatory statement." Id. at 380-81. In the present case, Malek did not have any records of the complaints, all of the complaints were anonymous, and Malek did not investigate any of the complaints to see if they could be substantiated. Notably, Malek admitted in his deposition that he could not do anything about the complaints because under company policy, complaints are deemed not credible when anonymously made. Thus,

Malek had no reason to believe in the truth of the complaints and, therefore, was not privileged to make any statements relating thereto.[11]

IV.

Because Thomas has satisfied all elements of his defamation claim for summary judgment purposes and Malek's statements were not privileged, the district court's grant of summary judgment was improper. We therefore reverse the grant of summary judgment and remand this case for further proceedings consistent with this opinion.

_____

[11]Having determined that no qualified privilege exists protecting Malek's statements, we need not decide whether the district court erred in determining that Thomas failed to show actual malice. A plaintiff need only show actual malice once the defendant has established that the statements were entitled to a qualified privilege. See Sherman, 687 F.3d at 1009.